STATE UNIVERSITY OF NEW YORK, Respondent, *v.* ROBERT K. DENTON et al., Appellants.

Fourth Department, November 5, 1970.

*Herald Price Fahringer, Philip B. Abramowitz, John W. Condon, Jr.*, and *Willard H. Myers, III*, for appellants.

*John C. Crary, Jr.* (*Thomas H. Winfield* of counsel), for respondent.

*Saul Touster* for American Association of University Professors, *amicus curiae*.

DEL VECCHIO, J. P.  Appellants, 45 members of the faculty of the State University of New York at Buffalo, appeal from a judgment adjudging them guilty of criminal contempt for violating a preliminary injunction issued by Supreme Court, Erie County.  Execution of the 30-day jail sentence has been stayed pending determination of the appeal.

In the course of student disturbances and disorders on the university campus in late February, 1970 the administration requested the aid of the Buffalo city police.  As a consequence, a sizable number of the public police force moved onto the campus where clashes with students ensued.  Members of the university administration were barred from campus offices and a basketball game was disrupted by students demanding the removal of the police officers.  The State concedes that the appellants here, as distinguished from the students, " were not party to the violent and disruptive actions leading to the injunction."

In an attempt to prevent further acts of violence, the university on February 27, by order to show cause, commenced an action against 13 named students and John Doe and Jane Doe for a permanent injunction.  The order to show cause, which was coupled with a temporary restraining order, required the named students to show cause why a temporary injunction restraining certain conduct on the campus should not issue.  On March 5, the return day of the show cause order, no appearance was made on behalf of the students, and an order was made enjoining the students " and all other persons receiving notice of this preliminary injunction, whether acting individually or in concert " (1) from acting within or adjacent to plaintiff's buildings in such unlawful manner as to disrupt or interfere with plaintiff's lawful and normal operations or unlawfully to interfere with ingress to or egress from such properties or otherwise to disrupt the lawful educational function of the university, and (2) from employing unlawful force or violence or the unlaw-

ful threat of force and violence against persons or property.

The preliminary injunction was served by posting copies at various locations on the campus.

On March 11 the faculty senate of the university passed a resolution urging the acting president of the institution to order the withdrawal of the police from the campus, but he took no such action.

The judgment we are reviewing found appellants faculty members guilty of willfully violating the provisions of the preliminary injunction of March 5 in that on March 15, acting individually and in concert with each other and in concert with others with notice of the preliminary injunction, they entered the office of the president of the university located on the campus and unlawfully refused to leave the office when asked to do so. Appellants were not among the named defendants in the injunction action, were not parties to the application for the temporary injunction and were never personally served with the order of March 5.

The threshold question to be considered, therefore, is whether appellants were bound by the order of March 5, which was addressed to the named student defendants and "all persons having knowledge" of the order, and whether accordingly appellants may be found guilty of criminal contempt for its violation. Well-settled principles of law require a negative answer to the inquiry. The rules respecting preliminary injunctions were laid down in the landmark case of *Rigas* v. *Livingston* (178 N. Y. 20). There, speaking of the statutory authority for the issuance of such injunctions (section 604 of the Code of Civil Procedure, which is substantially identical in its critical aspect to the present authority, CPLR 6301), the Court of Appeals said (pp. 24–25): "In terms the Code authorizes an injunction against the defendant only, not the whole world. * * * Therefore, so far as the order purported to restrain all other persons having knowledge of the injunction, this provision was inoperative to enlarge its effect. It is true that persons not parties to the action may be bound by an injunction if they have knowledge of it, provided they are servants or agents of the defendants or act in collusion or combination with them * * * but the underlying principle in all cases of this class, on which is founded the power of the court to punish for the violation of its mandate persons not parties to the action, is that the parties so punished were acting either as the agents or servants of the defendants or in combination or collusion with them or in assertion of their rights or claims. Persons, however, who are not connected in any way with the parties to the action are not restrained by the order

of the court.'' These principles were reaffirmed in *People ex rel. Stearns* v. *Marr* (181 N. Y. 463), *Briddon* v. *Briddon* (229 N. Y. 452), *Chase Nat. Bank* v. *Norwalk* (291 U. S. 431), *International Brotherhood of Teamsters* v. *Keystone Fgt. Lines* (123 F. 2d 326) and in the frequently cited opinion of Judge LEARNED HAND in *Alemite Mfg. Corp.* v. *Staff* (42 F. 2d 832, 832–833) in which he said: '' No court can make a decree which will bind any one but a party; a court of equity is as much so limited as a court of law; it cannot lawfully enjoin the world at large, no matter how broadly it words its decree. If it assumes to do so, the decree is pro tanto brutum fulmen, and the persons enjoined are free to ignore it. It is not vested with sovereign powers to declare conduct unlawful; its jurisdiction is limited to those over whom it gets personal service, and who therefore can have their day in court. Thus, the only occasion when a person not a party may be punished, is when he has helped to bring about, not merely what the decree has forbidden, because it may have gone too far, but what it has power to forbid, an act of a party. This means that the respondent must either abet the defendant, or must be legally identified with him.''

Measured by these criteria, the appellants were not made subject to the preliminary injunction by the language '' all persons receiving notice of this preliminary injunction ''. There is no basis on the facts presented for the conclusion that appellants, who had no opportunity to be heard in the injunction proceedings, were subject to punishment for violation of the order of March 5. (*Dixon* v. *Talerico,* 217 App. Div. 191.) '' The courts * * * may not grant an enforcement order or injunction so broad as to make punishable the conduct of persons who act independently and whose rights have not been adjudged according to law.'' (*Regal Knitwear Co.* v. *Board,* 324 U. S. 9, 13.)

We need not reach the question whether there was an adequate showing to justify Special Term's conclusion that appellants had knowledge of the preliminary injunction because we conclude that knowledge of a nonparty alone is not sufficient without proof of agency or collusion with the named defendants to impose liability for a violation. (Accord, *Wright* v. *County School Bd.,* 309 F. Supp. 671; *Briddon* v. *Briddon, supra*; *Rigas* v. *Livingston, supra*; 7A Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 6301.25.) Both *Rigas* and *Briddon* (*supra*) involved notice of the existence of the injunction on the part of the person charged with contempt, but the orders of contempt were overturned. We would point out, however, that in our view there is a serious question whether posting alone, without personal

service or reading aloud the provisions of the temporary injunction, was sufficient to subject appellants to the prohibition of the mandate and to make them liable to criminal contempt conviction for its violation.

The record in the instant case is devoid of any proof that the students violated the injunction and the evidence is legally insufficient to establish that the faculty members either were agents of or acted in collusion with them. The injunction was specifically aimed at the conduct of the students. The faculty members were not parties to the disruptive actions which led to the injunction nor were they charged with acting in concert with or as agents of the students. Consequently, even if they had knowledge of its provisions, they could not be held in contempt for their independent action in disobeying the injunction.

Plaintiff offered proof that after the faculty members entered the president's office one of the group handed to a university staff member a paper which stated that the group would remain until the police were removed from the campus and that they were in sympathy with the general purposes of the strike. Plaintiff argues that this established that appellants acted in concert and/or collusion with the named defendants as aiders and abettors. The concession that appellants were not parties to the disruptive actions leading to the injunction is a clear indication that they were not acting in concert and/or collusion with the students and, since there was no proof that the students themselves violated the injunction, it cannot be said that appellants aided and abetted them. (*Garrigan* v. *United States,* 163 F. 16; see, also, *United Pharmacal Corp.* v. *United States,* 306 F. 2d 515.) The mere fact that an actor may be sympathetic to the desires of one properly bound by an injunction, or that by his conduct the former accomplishes what the party enjoined wants accomplished, is not sufficient to establish beyond a reasonable doubt that the conduct was carried out in combination or collusion with the named enjoinee. (*Rigas* v. *Livingston, supra.*) We conclude therefore that appellants were not bound by the injunction and that the application to punish appellants for contempt of court arising out of a violation of the order of March 5 should have been denied.

For the guidance of the court and parties in future criminal contempt proceedings arising out of civil actions, we make the following comments: Although these proceedings have been characterized in this jurisdiction as civil special proceedings (*Matter of Douglas* v. *Adel,* 269 N. Y. 144, 146; *Eastern Concrete Steel Co.* v. *Bricklayers' & Mason Plasterers' Int. Union,* 200 App. Div. 714, 717), we are bound by decisions of the United

States Supreme Court to recognize that "criminal contempt is a crime in the ordinary sense * * * convictions for criminal contempt are indistinguishable from ordinary criminal convictions, for their impact on the individual defendant is the same." (*Bloom* v. *Illinois*, 391 U. S. 194, 201.) In the words of Mr. Justice Holmes, "These contempts are infractions of the law, visited with punishment as such. If such acts are not criminal, we are in error as to the most fundamental characteristic of crimes as that word has been understood in English speech." (*Gompers* v. *United States*, 233 U. S. 604, 610.)

"In criminal contempts, as in criminal cases, the presumption of innocence obtains. Proof of guilt must be beyond reasonable doubt and the defendant may not be compelled to be a witness against himself, *Gompers* v. *Bucks Stove & Range Co., supra*, p. 444. The fundamental characteristics of both are the same." (*Michaelson* v. *United States*, 266 U. S. 42, 66.) Due process of law requires that the accused should be advised of the charges against him and have a reasonable opportunity to meet them by way of defense or explanation with the assistance of counsel and the right to call witnesses. (*Cooke* v. *United States*, 267 U. S. 517, 537.)

We also recognize as fundamental in a proceeding of this nature the right to be confronted by the accuser and to cross-examine him. When, as here, a person charged with criminal contempt has controverted the charges through his attorney as he is entitled to do (*People ex rel. Supreme Ct.* v. *Albertson*, 242 App. Div. 450, 453), a full hearing is required at which the disputed issues of fact may be resolved. At such a hearing witnesses should be produced, rather than mere affidavits, thereby ensuring a party the right to confront and cross-examine witnesses. These rights are basic to a defendant charged with the commission of a criminal act and we see no reason why they do not appertain to one charged with criminal contempt with the same force as those rights explicitly assured by *Gompers* v. *Bucks Stove & Range Co.* (*supra*) and *Cooke* v. *United States* (*supra*).

The judgment should be reversed and the proceeding dismissed.

Marsh, Witmer, Bastow and Henry, JJ., concur.

Judgment unanimously reversed on the law and facts and proceeding dismissed, without costs.