OPINION OF THE COURT
Richard W. Wallach, J.
This is an action brought by the Attorney-General of the State pursuant to section 213-b of the Education Law to shut down the activities of defendant John Magee which consist of selling on a large commercial basis written materials designed and tailored for student cheating in the course of preparing college and graduate level academic assignments.
A preliminary injunction issued against Magee on August 3, 1979, by order of Judge Evans. That order enjoined Magee and his agents from peddling prepared texts to be palmed off upon unsuspecting faculty as student-completed work on the college campuses of this State.
The People now move for summary judgment. Defendant’s opposition raises no issue of fact for trial. His basic defense is that the Education Law prohibits the rendering of assistance for hire, and his products were not "assistance” but rather publications entitled to First Amendment protection. He argues that his papers bear the same status as an encyclopedia article or bibliography, and that the warning on his catalogue of approximately 5,000 subjects for sale[1] and the "conditions of sale”[2] signed by the purchasing student, are sufficient to raise an issue of fact as to his good faith.
These arguments are plainly specious. The papers purchased by the Attorney-General’s agents and annexed to the motion are plainly designed to deceive and would have no other utility in the world of scholarship. Carefully tailored for submission as undergraduate work and keyed to the assignments in specific undergraduate and graduate courses, they were sold for that express purpose by defendant and his *347 agents. These materials do not fall within the exception to subdivision 4 of section 213-b of the Education Law provided for copyrighted materials.
The fact that the papers sold by defendant (at $3.50 per page) could conceivably be put to a lawful use by a student of Aristotle or Shakespeare does not make the statute interdicting them unconstitutional. A gaming device which could be played for sheer entertainment may be outlawed if the purpose to which it is put is gambling (Matter of Albert Simon, Inc. v Myerson, 36 NY2d 300; Wnek Vending & Amusements v City of Buffalo, 96 Misc 2d 983). These typewritten papers, in a format designed for direct submission, and taken together with defendant’s seductive sales literature,[3] are full proof of unlawful intended use.
Nor is defendant saved by the pious disavowals of plagiaristic intent which the paper buyer ritualistically signs. This procedure is patently tongue-in-cheek, and executed with an obvious wink. Precisely the same subterfuge was easily brushed aside by the court in State of New York v Saksniit (69 Misc 2d 554), a similar cheating mill case in which this very defendant is named subordinate offender. Such a sanctimonious charade stands on the same footing as the closing paragraphs in Fanny Hill (see Memoirs v Massachusetts, 383 US 413; for the text of the closing pieties see Justice Douglas’ concurring opn, at p 425). Undeniably Cleland’s heroine, after dozens of erotic bordello adventures, purports in the final paragraphs of her narrative to discover the true value of domestic tranquility. That belated appreciation did not serve to convert this work into a moral tract, nor render it suitable for 18th century Anglican curates in their parish rounds.
There is no genuine issue of fact. The People are now entitled to a permanent injunction.
On a second branch of the motion, the People now move to punish Magee for contemptuous defiance of the preliminary injunction, and submit extensive evidence that he has grossly flouted its terms. Massive proofs have been submitted to show that defendant’s solicitation of student cheats has continued unabated after the injunction issued.
It is clearly established in the affidavits of Joseph T. Cashin, *348 Mecia Voulo, Michael Gilligan and Cindy Wagh that on four clearly articulated occasions defendant violated the terms of the preliminary injunction. These violations by defendant constituted criminal contempt of the court’s lawful mandate (Judiciary Law, § 750, subd A, par 3).
Defendant asserts that the Attorney-General’s failure to comply with CPLR 5104 (by not serving a certifíed copy of the preliminary injunction), and the omission to serve him personally (by serving the order to show cause upon his attorney rather than upon defendant himself) divests the court of jurisdiction to punish him for contempt.
The order to show cause dated October 29, 1979 issued by Honorable Sidney A. Asch provided that service be made on defendant by serving a copy on his attorney. This procedure was followed. Such direction for service is in conformity with section 761 of the Judiciary Law providing for service in civil contempt proceedings and in accord with CPLR 2103 (subd [b]). Despite the foregoing, defendant asserts that only personal service pursuant to CPLR 5104 is a sufficient foundation for a contempt order.
However, defendant actively contested the preliminary injunction issued on August 3, 1978. Although defendant states that "there is no affidavit or other evidence that your deponent received actual notice of the Court order, he is alleged to have wilfully violated”, defendant makes no denial that he had actual notice. "No person with knowledge of the terms of an injunction, even if not a party himself, can aid or cooperate with a party in doing the prohibited act without incurring the penalty prescribed by statute” (People ex rel. Stearns v Marr, 181 NY 463, 468). (Emphasis added.) A fortiori, parties who have actual knowledge of the mandate of a court may be punished for contempt even though not personally served with a certified copy of the order allegedly disobeyed (Yorktown Cent. School Dist. No. 2 v Yorktown Congress of Teachers, 42 AD2d 422; City School Dist. of City of Schenectady v Schenectady Federation of Teachers, 49 AD2d 395; Puro v Puro, 39 AD2d 873).
The case of Present v Aranyi (38 AD2d 801) relied upon by defendant, in which a Special Term order of contempt was reversed for failure to serve a certified copy of the order, affords him no comfort here. In that case the only notice defendant received was a short form decision as published in the Law Journal received in the mail one day before the *349 directed appearance. This inadequate notice is distinguishable from the instant case where defendant was privy to every stage of the litigation. Under circumstances of defendant’s actual knowledge, the court-directed service here is a sufficient foundation for a finding of willful contempt.
On the contempt branch of the motion defendant urges that the question of his willfulness in violating the temporary injunction requires a hearing. There is no merit to this contention (State of New York v Unique Ideas, 56 AD2d 295). Defendant’s operation is no small sideline. In his examination before trial defendant deposed that his is an interstate business with five offices located in New Jersey, California, and Illinois as well as in New York. Seven employees handle sales, solicitation, and service. A sad by-product is the exploitation of down-at-the-heels Ph. D’s who churn out specifically commissioned assignments at Grub Street rates. While defendant argues that he did not "authorize” his agents to corrupt students or specifically to violate the preliminary injunction, this argument is simply a transparent evasion. A party is presumed to intend the natural and probable consequences of his acts (Thomas v People, 67 NY 218, 225), a presumption which defendant has failed to put in issue here. And, of course, the manner in which defendant advertised and purveyed his wares (e.g., n 3) conclusively serves to separate, as far as intent is concerned, "pretense” from "reality” (Ginzburg v United States, 383 US 463, 470). There is simply "no room for reasonable doubt or dispute” as to the extent of the contempt (cf. Matter of McDonnell v Frawley, 23 AD2d 729, 730).
Accordingly, the court directs that (1) a permanent injunction may issue; (2) defendant is found in contempt of the preliminary injunction; and (3) a fine shall be imposed upon defendant in the sum of $1,000 (the sum of $250 on each of the four contempts established).

. "Our Company operates as a publisher and distributor of educational source material. It is not, and never has been, a writer of term papers or other academic work. The material we provide is intended to provide the reader with background and source material on a given topic, and not as a substitute for the reader’s own original research and writing. We do not support or condone plagiarism or academic fraud of any nature.”

. "I further agree and warrant that I shall not plagiarize or submit all, or any part of said material as my own in fulfillment of the requirements for a degree, diploma, certificate, courses of study, nor permit any other person or persons to do so.”

. For example defendant’s hand out card reads: "research papers thousands on file Send $2 for Mail-Order Catalog Writing, Editing, Speeches, Research Quality Unsurpassed — Lowest Prices”