■ STATE OF NEW YORK et al., Respondents, v CONGRESS OF RACIAL EQUALITY (C.O.R.E.) et al., Appellants. — Order of the Supreme Court, New York County (Myers, J.), entered June 8, 1982, which found the individual defendants Roy Innis and Wendell Garnett guilty of criminal contempt of court and found the said individual defendants and the corporate defendant, Congress of Racial Equality (C.O.R.E.) to be in civil contempt of court and fined the individual defendants $8,000 for the criminal contempt and the individual and corporate defendants $178,184 for the civil contempt, is unanimously modified, on the law and facts, and in the exercise of discretion, to the extent of striking those portions of the decretal paragraphs that adjudge the individual and corporate defendants to be in civil contempt and is otherwise affirmed, without costs. By the order of the Supreme Court, New York County (Stecher, J.), dated April 26, 1979, the individual and corporate defendants were preliminarily enjoined from soliciting, receiving, or collecting contributions from the public by any means whatsoever and were barred and prohibited from transferring and disposing of any funds or property previously solicited, collected or received from the public. The order further provided that there be an immediate trial of the underlying action brought by the Attorney-General which sought to permanently enjoin the defendants from the solicitation of funds from the general public by false and fraudulent misrepresentations. Alleging that the defendants had continued to solicit funds from the public in violation of that order of April 26, the Attorney-General moved, in December, 1979, to punish the defendants for civil and criminal contempt. On February 14, 1980, Special Term (Allen Murray Myers, J.) referred the contempt motion to a special

referee to hear and report on the issue of whether the order of April 26, 1979 had been violated and if so, by whom. In the meantime, the defendants moved before Judge Stecher to vacate the preliminary injunction. That motion was granted in a decision dated March 31, 1980, in which Judge Stecher found that there had been a failure by the State to bring the case to an immediate trial as directed in his order of April 26. He found further that there was an adequate demonstration that the journal in respect to which solicitations were allegedly falsely and fraudulently made, had in fact been published, with enough of a showing of a circulation to raise a serious doubt as to the Attorney-General's entitlement to the preliminary injunction in respect thereto. He also found that there was "an inadequate showing of solicitation with the intent to defraud as required by statute", and concluded that this finding together with the State's failure to move the case to immediate trial warranted a termination of the preliminary injunction. Accordingly he entered an order dated April 16, 1980, directing that the injunction granted by order dated April 26, 1979 "is effective this date vacated." The hearings on the contempt motion proceeded and the referee reported in April of 1981 that although the defendants had solicited and collected contributions in violation of Judge Stecher's order of April 26, 1979, they had not willfully violated that order and therefore none of them were guilty of either civil or criminal contempt. Holding that the referee exceeded the mandate of the referring court in purporting to decide whether or not the defendants were or were not guilty of civil and criminal contempt, Special Term (Myers, J.) confirmed the referee's report only insofar as it found that the defendants Innis, Garnett and C.O.R.E. had solicited and collected charitable contributions between May 1, 1979 and August 20, 1979, and that there was no legal basis for any distinction between prior contributors to C.O.R.E., i.e., "patrons and members" and members of the public. The court then found, based upon the evidence before the referee, as reflected in the report, that the defendants Innis, Garnett and C.O.R.E., were guilty of both civil and criminal contempt. The individual defendants, Innis and Garnett were each fined $8,000 for the criminal contempt and they and the corporate defendant were fined $178,184 for the civil contempt. The decision of Special Term finding defendants guilty of civil and criminal contempt was rendered on January 13, 1982. On the day before, January 12, 1982, after extensive negotiations, and with the help of the court, the underlying lawsuit brought by the Attorney-General against C.O.R.E., was settled and a stipulation executed terminating the action upon specified conditions. Defendants argue that because the preliminary injunction issued by Judge Stecher had been vacated prior to a determination of the contempt motion, and the underlying action settled as well, no adjudication of civil or criminal contempt could properly be made. They rely upon such cases as *Peck v Yorks* (32 How Pr 408) and *People ex rel. Interborough R. T. Co. v Lavin* (131 Misc 758, 759, affd 220 App Div 830, revd on other grounds 247 NY 65), where it is postulated that " 'an injunction, which is but an order of the court, can have no more force or extended operation, after it is set aside or modified, than a statute repealed or modified in regard to acts previously done.' " While there may be some merit to this argument in respect to a civil contempt, and while earlier New York cases, holding as did the courts in *Peck v Yorks* and *Interborough R. T.* apparently made no distinction between civil and criminal contempts, the respective offices served by the two warrant, in our view, a difference in treatment. (See Ann., 148 ALR 1024.) A criminal contempt is defined as a willful disobedience of a court's lawful mandate (Judiciary Law, § 750, subd A, par 3) and is imposed generally to preserve the power and vindicate the dignity of the court. "The purpose of a criminal contempt proceeding for willful disobedience of its

lawful mandate is to vindicate the authority of the court and its orders." (*Mount Sinai Hosp. v Davis,* 8 AD2d 361, 363.) Thus an order of the court must be obeyed, no matter how erroneous it may be, so long as the court is possessed of jurisdiction and its order is not void on its face. (*Ketchum v Edwards,* 153 NY 534; *City School Dist. of City of Schenectady v Schenectady Federation of Teachers,* 49 AD2d 395.) This requirement of obedience to the lawful mandate of the court obtains even though it is afterwards held that the order was erroneous or improvidently made or granted by the court under misapprehension or mistake. (*Ketchum v Edwards,* 153 NY 534, *supra; Baksi v Wallman,* 272 App Div 752.) By contrast, a civil contempt generally has as its purpose the provision of a remedy for an injured suitor, to preserve and enforce the rights of private parties and to compel obedience to orders and decrees made for the benefit of such parties. (See 21 NY Jur 2d, Contempt, § 3, p 221.) The court below indicated in its decision that a fine imposed for civil contempt under section 773 of the Judiciary Law must be paid over to the "aggrieved party" and that here the "aggrieved part[ies]" are the contributors whom the order of April 26, 1979 sought to protect. The learned Justice concluded that "the actual loss of these parties [as specified in Judiciary Law, § 753] is the amount contributed by them." Thus the civil fine was fixed in the amount of the "illegally solicited contributions", with a direction by the court that "this sum should be paid over to the contributors." Significantly however, Judge Stecher had previously found that the "C.O.R.E Equal Opportunity Journals" for which the solicitations had been made, had in fact been published and that enough of a circulation of these journals had been made to raise serious doubts as to the Attorney-General's entitlement to the preliminary injunction. Moreover, and of equal significance is the fact that the stipulation of settlement approved by the court on January 12 (Shanley Egeth, J.), disposed of the lawsuit without any provision in respect to or mention of repayment of the funds "illegally solicited" to the persons from whom they were obtained. The fines that may be imposed for a civil contempt are specifically enumerated in section 773 of the Judiciary Law and are of two kinds: one where actual damage has resulted from the defendant's contemptuous acts and one where there may be prejudice to a complainant's rights, but where no actual loss or injury has been caused. (See Judiciary Law, § 773; *State of New York v Unique Ideas,* 44 NY2d 345, 349.) "In either case * * * civil contempt fines must be remedial in nature and effect * * * [t]he award should be formulated not to punish an offender, but solely to compensate or indemnify private complainants * * * here represented but not displaced by the Attorney-General" (*State of New York v Unique Ideas, supra,* at p 349). It would seem therefore that although contributions were solicited for the journal in violation of Judge Stecher's order, journals were in fact published and circulated to a significant degree. This fact coupled with Judge Stecher's finding that there was no adequate showing of solicitation with intent to defraud, satisfactorily indicates that no "actual injury or loss" was sustained by the members of the public represented in this proceeding by the Attorney-General, nor was there any prejudice to their rights. Thus no compensation or indemnification is warranted. It is deemed to be of no small significance in this regard that apparently no continuing concern in respect to the return of these solicitations was expressed by the Attorney-General subsequent to Judge Stecher's order vacating the injunction nor was any reflected in the terms and conditions of the stipulation settling the underlying action. In these circumstances, the levy of a civil contempt fine was unwarranted. Concur — Kupferman, J. P., Sandler, Sullivan, Ross and Alexander, JJ.