OPINION OF THE COURT
Harold Tompkins, J.
The plaintiff Attorney-General of the State of New York (Attorney-General) moves by order to show cause pursuant to article 19 of the Judiciary Law and CPLR 5104 for an order adjudging defendants East Coast Auto Consultants Corp. (East Coast) and its president, defendant Brian Lombardo, guilty of civil and criminal contempt of court. The Attorney-General seeks a fine of $865,000 and imprisonment of Lombardo for the criminal contempt and for the civil contempt, a fine sufficient to compensate aggrieved consumers.
This action was commenced by service of an order to show cause with a temporary restraining order dated May 10, 1983. The summons and complaint were served simultaneously with the order to show cause. The complaint *210 demands judgment permanently enjoining defendants from engaging in fraudulent and deceptive business practices and seeks full restitution for consumers defrauded.
Defendants are engaged in the auto loan brokerage business. The temporary restraining order enjoined defendants from advertising in local newspapers that they were “credit consultants”, provide “credit galore” or offer any credit assistance. The Attorney-General was acting upon numerous complaints which demonstrated a pattern of conduct on the part of defendants indicating a scheme designed to defraud consumers.
Defendant East Coast advertises in local newspapers that it can obtain credit for consumers who wish to purchase automobiles but have credit problems. Complaints lodged with the Attorney-General indicate that consumers contact East Coast by phone and East Coast requests employment history, salary and credit references. The consumer is subsequently informed that their application is “approved”. In reliance on these representations many consumers sign contracts with East Coast in which East Coast promises to “assist, guide and/or direct consumer in an attempt to obtain financing.” A substantial number of consumers then pay East Coast a “non-refundable” advance broker’s fee of $100 or more and in some instances a down payment on the purchase of an automobile.
Most consumers who sign contracts with East Coast do not receive assistance, guidance or direction in obtaining a loan and ultimately do not obtain financing. Neither those consumers who pay the $100 broker’s fee or those that advance a down payment are told that a substantial number of those consumers who make these payments do not receive financing. The only service that East Coast performs is that of directing consumers to a single automobile dealership in Bayshore, New York. When the consumer goes to this dealer he or she is in substantially the same position as a consumer who goes to the dealer directly.
The Attorney-General argues that this conduct on the part of defendants constitutes deceptive acts and practices as defined in section 349 of the General Business Law and fraudulent and illegal conduct within the meaning of subdivision 12 of section 63 of the Executive Law. A violation *211 of subdivision 1 of section 5-531 of the General Obligations Law, by collecting the advance brokerage fee is also alleged.
The May 10, 1983 temporary restraining order enjoined defendants from advertising “that they are ‘credit consultants’, provide ‘credit galore’ or that they offer any other credit service or assistance”: Annexed to the moving papers were advertisements from the New York Post and Daily News which read as follows:
“Credit Consultants!
Credit Galore!
New and Used Cars!
212 423-9700”
and
“Credit Consultants!
Down Payment Assures Credit
Credit Galore!
New and Used Cars
212 423-9700”.
Defendants were ordered to cease running these ads. The May 10,1983 order was continued pending the determination of the motion for a preliminary injunction. In the order of November 9, 1983, the court (Shorter, J.) granted the preliminary injunction and enjoined defendants from using the afore-mentioned terminology and “from advertising or representing to consumers either expressly or by implication that defendants provide assistance in obtaining automotive credit or that they provide any other credit service”.
Defendants do not contest service of the orders or notice of their contents.
After service of the May 10, 1983 order, East Coast continued to run daily advertisements on the “Auto Loans” section of Newsday which read:
“Credit Problems?
No Credit?
Call Today — Drive Today
1 Hour Service
(212) 423-9700 (516) 466-8804”
and
*212 “Credit Consultants
Credit Galore
New and Used Cars
212 423-9700 516 466-8804.”
The advertisement also continued in the Daily News but with a slight change in the wording substituting the word “Auto” for “Credit”. The Attorney-General also discovered that commencing on or about October 20,1983, East Coast was running an advertisement in the Daily News but with a different phone number and the name “Bayside Auto Sales”. The Attorney-General recently learned that this is in fact an East Coast auto loan advertisement.
In all the defendants have advertised on 173 days in violation of this court’s orders.
Defendants’ opposition to the contempt application centers on the contention that the advertising agency retained by defendants was responsible for the advertising at issue and was instructed by defendants to refrain from advertising in the auto credit section of local newspapers and to otherwise comply with the court’s orders. They also contend that the change in wording of the advertisements in the Daily News from “Credit” to “Auto” consultants demonstrates compliance with the restraining order and preliminary injunction. Defendants also allege that they have complied with the order insofar as it required the return of fees to consumers.
The court finds beyond a reasonable doubt that defendants East Coast and Lombardo willfully violated the orders of May 10, 1983, and November 9, 1983, and are guilty of criminal contempt. Defendants’ contention that a hearing is required to determine whether their actions were willful and contumacious is without merit (State of New York v Unique Ideas, 44 NY2d 345; People v Magee, 102 Misc 2d 345). A hearing is only required where there is a factual dispute as to the compliance with the order or the willfulness of the violation. It is clear from the papers before the court that there was a continuing violation of the court’s order and that the contemners’ conduct was a willful disobedience of the order. The documentary evidence presented by the State demonstrates that defendants’ conduct was not only willful but that there was a *213 calculated effort on defendants’ part to cover up the knowing violation by changing the company name and phone number. In short, defendants have not offered any evidence to rebut the showing made by the Attorney-General. Defendants merely seek to avoid a contempt finding by alleging that their advertising agency was instructed to comply with the court’s order. However, the court’s orders both prohibited advertising for “any other credit service”. Thus, even if the advertisement had appeared in a different section of the paper, it still would have been a clear violation of the court’s orders.
As the court said in State of New York v Rothberg (Supreme Ct, NY County, index No. 41554/76, Alexander, J.) “Vague and conclusory allegations unsupported by any factual demonstration are insufficient to excuse non compliance with the lawful mandate of this court” (citing Matter of Storm, 28 AD2d 290).
“A criminal contempt is defined as a willful disobedience of a court’s lawful mandate (Judiciary Law, § 750, subd A, par 3) and is imposed generally to preserve the power and vindicate the dignity of the court.” (State of New York v Congress of Racial Equality, 92 AD2d 815, 816.) Civil contempt, on the other hand, is remedial in nature and fines awarded for civil contempt are designed to compensate or indemnify private complainants. Its purpose is to “preserve and enforce the rights of * * * and to compel obedience to orders and decrees made for the benefit of such parties.” (State of New York v Congress of Racial Equality, supra, p 817.)
Subdivision 4 of section 751 of the Judiciary Law provides for the punishment for criminal contempt where there has been a willful disobedience of a lawful mandate issued by the Supreme Court pursuant to subdivision 12 of section 63 of the Executive Law. Subdivision 12 of section 63 empowers the Attorney-General to seek injunctions to prohibit deceptive business practices designed to defraud consumers. Thus, subdivision 4 of section 751 of the Judiciary Law governs the punishment for criminal contempt in this case.
Subdivision 4 of section 751 provides for a fine not to exceed $5,000 per day for each day the contempt persists. *214 Here, the Attorney-General has documented 173 days of advertising in violation of the court’s order. The maximum fine under subdivision 4 of section 751 would total $865,000.
The court is guided by the terms of subdivision 4 of section 751 in assessing the fine. The section provides that the court “shall consider all the facts and circumstances * * * relating] to the contempt, including, but not limited to: (i) the extent of the wilful defiance of or resistance to the court’s mandate, (ii) the amount of gain obtained by the wilful disobedience of the mandate, and (iii) the effect upon the public of the wilful disobedience.” (Judiciary Law, § 751, subd 4, pars [i], [ii], [iii].)
The papers before the court are devoid of any showing by the Attorney-General as to the amount of gain realized by the willful disobedience of the temporary restraining order and preliminary injunction. There is also no indication of what the assets of East Coast and Lombardo are. Accordingly, the court is not in a position to assess a fine for the criminal contempt.
Similarly, the Attorney-General requests a fine for civil contempt to compensate defrauded consumers. The court finds that the Attorney-General has demonstrated with reasonable certainty that defendants disobeyed the court’s orders and that this disobedience was calculated to and actually did defeat, impair, impede and prejudice the rights and remedies of the plaintiff Attorney-General (Judiciary Law, §§ 753, 770). Defendants East Coast and Lombardo are guilty of civil contempt. However, since a fine for civil contempt must be fashioned to indemnify the aggrieved consumers, the Attorney-General must set forth the extent to which the consumers have been injured. Based upon these papers, the court cannot determine the losses suffered by the consumers which plaintiff represents. It is not clear to what extent the consumers have been reimbursed by defendants and what the actual out-of-pocket losses are.
Accordingly, the motion is referred to a referee to hear and report as to the limited issues of (1) whether and to what extent East Coast and Lombardo gained financially from the willful disobedience of the court’s orders, (2) the *215 assets of East Coast and Lombardo, and (3) the losses sustained by consumers as a result of fraudulent, deceptive and illegal activities of defendants. Pending the report, final determination of the motion is held in abeyance.