824 F.2d 184
 George SASSOWER, Petitioner-Appellee,
v.
The SHERIFF OF WESTCHESTER COUNTY, Respondent,
Lee Feltman, Esq., as Receiver for Puccini Clothes, Ltd.,
Intervenor- Respondent-Appellant,
State of New York, Intervenor-Appellant.
 No. 985, Docket 86-2458.
 United States Court of Appeals,
Second Circuit.
 Submitted April 13, 1987.
Decided July 15, 1987.
 
 George Sassower, White Plains, N.Y., plaintiff-appellee pro se.
 Feltman, Karesh, Major & Farbman (Donald F. Schneider, Edward Weissman, New York City, of counsel), for defendant-appellant Lee Feltman, as Receiver.
 Robert Abrams, Atty. Gen. of the State of N.Y. (Lawrence S. Kahn, Deputy Sol. Gen., David S. Cook, Sr. Atty., Christopher Keith Hall, Asst. Atty. Gen., New York City, of counsel), for intervenor-appellant State of N.Y.
 Before VAN GRAAFEILAND, PRATT, and MINER, Circuit Judges.
 GEORGE C. PRATT, Circuit Judge:
 
 
 1
 This appeal continues, in the federal courts, the " 'long and tortured history of litigation' " that began in New York State courts, see Raffe v. Doe, 619 F.Supp. 891, 893 (S.D.N.Y.1985) (quoting Raffe v. Citibank, N.A., 84 Civ. 305 (E.D.N.Y. Aug. 1, 1984), aff'd without opinion, 779 F.2d 37 (2d Cir.1985)), a litigation in which George Sassower has persistently presented meritless claims. See Report of the Special Referee, In re Barr, No. 1816-1980 (Sup.Ct.N.Y.Co. May 1, 1985).
 
 
 2
 Lee Feltman, Esq., receiver for Puccini Clothes, Ltd. ("the receiver"), appeals from an order of the district court, Edelstein, J., that adopted the findings and recommendations of Magistrate Gershon, and granted George Sassower's petition for a writ of habeas corpus. Judge Edelstein held that Sassower's conviction in New York State court of 63 counts of nonsummary criminal contempt, for which he had received a 30-day sentence, was unconstitutional because Sassower was not afforded a full evidentiary hearing and because there was no express finding of guilt beyond a reasonable doubt. Sassower v. Sheriff of Westchester Co., 651 F.Supp. 128 (S.D.N.Y.1986) (memorandum and order).
 
 
 3
 The principal issue presented on this appeal is whether Sassower's conviction of criminal contempt pursuant to N.Y.Jud.L. Sec. 751 violated his constitutional right to due process where neither the affidavits upon which the finding of guilt was based, nor Sassower's answer to the contempt motion, raised an issue of material fact and where Sassower refused to appear at a hearing before the court appointed referee. On this record we are fully satisfied that Sassower received all of the process he was due and we therefore reverse with a direction to the district court to deny the petition.
 
 BACKGROUND
 
 4
 While we are loath to expend more judicial resources on this vexatious litigant, some recitation of the facts and procedural history of this case is necessary. The facts underlying the voluminous litigation engineered by Sassower are outlined more fully by Judge Conner in Raffe v. Doe, 619 F.Supp. 891 (S.D.N.Y.1985).
 
 
 5
 Briefly, Sassower was the attorney for Hyman Raffe, a disgruntled shareholder of Puccini Clothes, Ltd. ("Puccini"), a New York corporation dissolved and placed in receivership by the New York Supreme Court. 619 F.Supp. at 892. Despite court orders disqualifying him from representing Raffe and enjoining him from filing Puccinni-related litigation, id. at 894-95, Sassower has bombarded both the state and federal courts with numerous motions (over 300), law suits (35), and Article 78 proceedings (40) directed against the receiver and his law firm, the attorneys for the other Puccini shareholders, various members of the judiciary, court appointed referees, and the New York State Attorney General. Brief of appellant Lee Feltman, Esq., as receiver for Puccini Clothes, Ltd. at 2-3. See 619 F.Supp. at 894.
 
 
 6
 Prior to the criminal contempt proceedings leading to this habeas corpus proceeding, Sassower had been held in criminal contempt four times and in civil contempt twice for violating state and federal orders enjoining him from filing actions related to the judicial dissolution of Puccini, and for disobeying a court order to appear at a deposition. See, e.g., Raffe v. Riccobono, No. 9522/85, slip op. at 6-7 (Sup.Ct.N.Y.Co. July 1, 1985), aff'd, 113 A.D.2d 1038, 493 N.Y.S.2d 70 (1st Dep't), appeal dismissed, 66 N.Y.2d 915, 498 N.Y.S.2d 1027 (1985); Raffe v. Citibank, N.A., 84 Civ. 305 (Nickerson, J.) (E.D.N.Y. June 7, 1985), aff'd, 755 F.2d 914 (2d Cir.1985). As a result of these convictions and based on a finding that he had engaged in "frivolous and vexatious litigation * * * for the purpose of harassing, threatening, coercing and maliciously injuring those made subject to it," Sassower has now been disbarred. In re Sassower, N.Y.L.J., Feb. 27, 1987, at 36, col. 3 (2d Dep't Feb. 23, 1987) (per curiam). The New York appellate court also found that Sassower engaged in professional misconduct that obstructed justice and damaged his client by continuing to litigate after he was disqualified. Id. at 36, col. 3.
 
 
 7
 On January 30, 1985, the state court proceedings leading to this proceeding began when the receiver moved in Supreme Court, New York County, for an order punishing Sassower for criminal contempt for violating court orders in the Puccini litigation. Sassower received a notice of motion informing him that the receiver would move for an order punishing him "for 64 separate counts of criminal contempt of court on the grounds that he has continuously refused to comply with and has wilfully and flagrantly violated several orders of this court." The notice also informed him that his failure to appear could result in his arrest and imprisonment for contempt of court, that the purpose of the hearing was to punish him for contempt of court, and that punishment could consist of a fine, imprisonment, or both.
 
 
 8
 The supporting affidavits identified documents, marked with Sassower's name, signature, and litigation back, that he had filed in state court in violation of court orders disqualifying him from representing Raffe and enjoining him from filing law suits against the receiver or his law firm, and in violation of the referee's directives regarding procedures in the Puccini dissolution proceeding.
 
 
 9
 Sassower filed three cross-motions for dismissal and four affidavits in opposition to the contempt motion. Although he stated that he was pleading "not guilty", he did not deny that he had filed the offending papers, but argued instead that the contempt proceeding was procedurally barred, that he was being denied equal protection, that he was being arbitrarily and discriminatorily prosecuted, that he was not disqualified, and that his activities were intended to expose the perjury, conspiracy, larceny and corruption of the receiver, the receiver's law firm, the attorney general's office, and the judiciary. Affidavit of George Sassower, In re Barr, No. 1816-1980 (Sup.Ct.N.Y.Co. December 16, 1985). He also indicated that he would continue to violate the orders by stating, "deponent has his own professional and moral obligations, which will be obeyed" and "deponent does not negotiate with criminals and barbarians, even those that hold law degrees!" Id. at 8. See In re Barr, 121 A.D.2d 324, 503 N.Y.S.2d 392, 392 (1st Dep't), appeal dismissed, 68 N.Y.2d 807, 506 N.Y.S.2d 1037, 498 N.E.2d 437 (1986).
 
 
 10
 After Judge Evans referred the contempt motion to a special referee, Sassower was notified by the attorney for the receiver that he was required to appear before the referee for proceedings on the criminal contempt motion and cross-motions. Consistent with his behavior in prior contempt proceedings, Sassower claimed that the referee was disqualified from adjudicating the contempt proceedings and failed to appear.
 
 
 11
 The referee determined that the affidavits, motions, and cross-motions raised no issue of fact requiring a hearing, and in a 71-page report, he concluded that all of the arguments presented by Sassower's papers had been raised and rejected in prior proceedings and actions. Report of the Special Referee, In re Barr, No. 1816-1980, at 8 (Sup.Ct.N.Y.Co. May 1, 1985). He found that Sassower's wilful violation of court orders was "documented by the filing of court papers and matters that appear on the record, in court proceedings," and noted that Sassower did not dispute or deny any of the facts forming the basis for the receiver's motion. Id.
 
 
 12
 Noting further that Sassower made "repetitive, sham, frivolous motions [and] commence[d] baseless actions" for the sole purpose of inflicting oppressive litigation costs upon the receiver in order to obtain a favorable economic settlement, the referee concluded:
 
 
 13
 The motion-in-chief sets forth in clear, concise language the charges of contempt, identifying each charge [by] the use [of] a separate consecutive number. No affidavit or paper is submitted in opposition containing a specific denial of any single charge. No facts are alleged disputing the detailed charges made by the movant.
 
 
 14
 Instead, three separate cross-motions are made with the supporting papers [asserting] the same conclusory claims that had been raised on prior applications to the courts.
 
 
 15
 Id. at 6-7.
 
 
 16
 Based on these findings and on his personal knowledge acquired during the course of this litigation, the referee sustained 63 of the 64 counts of contempt, id. at 15, and recommended that Sassower's pecuniary motives for his actions warranted the imposition of a 30-day sentence and a fine of $250 for each offense. Id. at 70.
 
 
 17
 In opposing the receiver's motion to confirm the report, Sassower once again failed to dispute the facts underlying the charges. Judge Evans confirmed the report but did not impose punishment, reasoning that Sassower would be deterred from continuing his misconduct by a recent incarceration on a different contempt conviction. The receiver's motion to renew, based on evidence that Sassower had continued to violate the courts' orders even after his release from incarceration, was denied by Judge Evans.
 
 
 18
 The New York Appellate Division reversed Judge Evans' denial of the motion to renew and modified his order by imposing a 30-day sentence, concluding that the lower court "abused its discretion by its failure to impose a sanction in light of the continuing contempts and [Sassower's] stated intention to continue to do so." In re Barr, 121 A.D.2d 324, 324, 503 N.Y.S.2d 392, 392 (1st Dep't), appeal dismissed, 68 N.Y.2d 807, 506 N.Y.S.2d 1037, 498 N.E.2d 437 (1986). Two state court judges denied habeas relief, see Sassower v. Sheriff of Westchester Co., No. 13503/86 (Sup.Ct. Westchester Co. Aug. 4, 1986) (order); Sassower v. Westchester Co., No. 13503/86 (2d Dep't Aug. 16, 1986) (endorsed memorandum in chambers), and Justice Thurgood Marshall denied interim relief, see Sassower v. Feltman, No. A-248 (U.S. Sept. 30, 1986) (order in chambers).
 
 
 19
 When Sassower filed a petition for habeas corpus pursuant to 28 U.S.C. Sec. 2254 in the United States District Court for the Southern District, Judge Edelstein referred the petition to Magistrate Gershon, who found that the procedures afforded to Sassower violated the fourteenth and sixth amendments of the United States Constitution because Sassower did not receive a full evidentiary hearing or public trial and because there was "no indication that the determination of guilt was based on a finding that the evidence proved petitioner's guilt * * * beyond a reasonable doubt." Sassower v. Sheriff of Westchester Co., 651 F.Supp. 128, 133 (S.D.N.Y.1986) (report and recommendation of Nina Gershon, United States Magistrate, Nov. 24, 1986). Although the receiver had offered to testify regarding Sassower's waiver of his right to a hearing, the magistrate did not address that issue.
 
 
 20
 The State of New York intervened pursuant to 28 U.S.C. Sec. 2403 on the ground that the report raised an issue of the constitutionality of N.Y.Jud.L. Sec. 751.
 
 
 21
 While Judge Edelstein was on vacation, Judge Sand released Sassower subject to his reconfinement by Judge Edelstein, who subsequently adopted the magistrate's findings without addressing the issue of Sassower's waiver of his right to a hearing. See id.
 
 DISCUSSION
 
 22
 Although Sassower's position on appeal is not easily deciphered, we interpret his claim below as resting on two grounds: first, that N.Y.Jud.L. Sec. 751 is unconstitutional on its face and second, that Sec. 751 is unconstitutional as it was applied him. The district court did not address the first basis for Sassower's claim but decided, on the second basis, that the procedures afforded Sassower prior to his conviction pursuant to Sec. 751 were constitutionally deficient.
 
 
 23
 On this appeal, New York State, out of an abundance of caution, urges the constitutionality of Sec. 751, which authorizes a maximum penalty of $250 or 30 days, or both, and provides that when a contempt is committed outside the view of the court, "the party charged must be notified of the accusation, and have a reasonable time to make a defense." N.Y.Jud.L. Sec. 751 (McKinney 1975). We have no difficulty accepting the state's position on this issue and note further that New York courts have experienced no difficulty in construing Sec. 751 to be consistent with the requirements of due process. See, e.g., County of Rockland v. Civil Service Employees Association, Inc., 62 N.Y.2d 11, 16-17, 475 N.Y.S.2d 817, 819-20, 464 N.E.2d 121, 123-24 (1984); Koota v. Colombo, 17 N.Y.2d 147, 151, 269 N.Y.S.2d 393, 395, 216 N.E.2d 568, 569, cert. denied, 384 U.S. 1001, 86 S.Ct. 1923, 16 L.Ed.2d 1015 (1966); State University of New York v. Denton, 35 A.D.2d 176, 180-81, 316 N.Y.S.2d 297, 302-03 (4th Dep't 1970).
 
 
 24
 We conclude, as well, that the district court erred by failing to distinguish petty contempt from serious crime for the purpose of evaluating the constitutionality of the procedures afforded to Sassower. The constitutional standard governing criminal contempt proceedings is not derived from the specific requirements of the sixth amendment. See Taylor v. Hayes, 418 U.S. 488, 498-500 & n. 9, 94 S.Ct. 2697, 2703-04 & n. 9, 41 L.Ed.2d 897 (1974); Levine v. United States, 362 U.S. 610, 616, 80 S.Ct. 1038, 1042, 4 L.Ed.2d 989, reh'g denied, 363 U.S. 858, 80 S.Ct. 1605, 4 L.Ed.2d 1739 (1960). Rather, the accused is entitled to the fairness that is guaranteed by the due process clause of the fifth and fourteenth amendments, 418 U.S. at 500, 94 S.Ct. at 2704 n. 9; 362 U.S. at 616, 80 S.Ct. at 1042-43, and must therefore receive notice and an opportunity to be heard. See United States v. Lumumba, 741 F.2d 12, 16 (2d Cir.1984) (explaining that contempts committed in the view of the court may be punished instantly but contempts committed outside the view of the sentencing judge are "nonsummary contempts" to which due process requirements apply) (citation omitted). See also United States v. Lumumba, 794 F.2d 806, 815 (2d Cir.), cert. denied, --- U.S. ----, 107 S.Ct. 192, 93 L.Ed.2d 125 (1986) (where attorney was cited for criminal contempt during trial, but adjudication and punishment occurred after trial, he was entitled to notice and " 'a reasonable opportunity to defend or explain his actions or present arguments in mitigation,' " but was not entitled to a " 'full-blown trial' ") (citations omitted). For reasons outlined below, we conclude that the due process standard was met, and the application of Sec. 751 to Sassower was constitutional.
 
 
 25
 Although we are bound by Bloom v. Illinois, 391 U.S. 194, 201, 88 S.Ct. 1477, 1481, 20 L.Ed.2d 522 (1968), to recognize that "[c]riminal contempt is a crime in the ordinary sense," the distinction between petty criminal contempt and serious contempt crimes has remained vital since that case was decided. In Bloom, where a defendant was sentenced to 24 months imprisonment upon his conviction of contempt, the Court held that defendants charged with serious criminal contempts are entitled to trial by jury. Id., 88 S.Ct. at 1480. In so holding, the Court confirmed that "criminal contempt is a petty offense unless the punishment makes it a serious one." Id. See Taylor v. Hayes, 418 U.S. 488, 495, 94 S.Ct. 2697, 2701, 41 L.Ed.2d 897 (1974) (contempt of court is a petty offense that may be tried without a jury when "penalty actually imposed does not exceed six months or a longer penalty has not been expressly authorized by statute"); accord Musidor, B.V. v. Great American Screen Designs, 658 F.2d 60, 65-66 (2d Cir.1981), cert. denied, 455 U.S. 944, 102 S.Ct. 1440, 71 L.Ed.2d 656 (1982). See also Young v. United States ex rel. Vuitton et Fils S.A., --- U.S. ----, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987) ("While contempt proceedings are sufficiently criminal in nature to warrant the imposition of many procedural protections, their fundamental purpose is to preserve respect for the judicial system itself.").
 
 
 26
 The circuit courts continue to recognize the vitality of the constitutional distinction between serious crimes and criminal contempt. See, e.g., United States v. Martinez, 686 F.2d 334, 343 (5th Cir.1982) ("[c]riminal contempts have retained their unique status as quasi-criminal sanctions" to which the due process guarantee of fundamental fairness, rather than the provisions of the Bill of Rights, apply); United States v. Nunn, 622 F.2d 802, 803 (5th Cir.1980) ("[n]othing in Bloom signalled an abandonment of the doctrine that attributes 'special constitutional status' to contempt proceedings"); United States v. Bukowski, 435 F.2d 1094, 1101 (7th Cir.1970) ("The procedural protections which have gradually surrounded imposition of criminal contempt penalties * * * represent the accretions of 'fundamental fairness' rather than application of provisions of the Bill of Rights."), cert. denied, 401 U.S. 911, 91 S.Ct. 874, 27 L.Ed.2d 809 (1971). At least two circuits have rejected the argument that due process requires indictment by grand jury for criminal contempts. See Nunn, 622 F.2d at 804; Bukowski, 435 F.2d at 1099-1102.
 
 
 27
 "The guarantees of due process call for a 'hearing appropriate to the nature of the case.' " United States v. Raddatz, 447 U.S. 667, 677, 100 S.Ct. 2406, 2413, 65 L.Ed.2d 424 (1980) (citing Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). The following factors "determin[e] whether the flexible concepts of due process have been satisfied: (a) the private interests implicated; (b) the risk of an erroneous determination by reason of the process accorded and the probable value of added procedural safeguards; and (c) the public interest and administrative burdens, including costs that the additional procedures would involve." Id., 100 S.Ct. at 2413 (citing Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976)).
 
 
 28
 In this case, Sassower's interest in liberty for 30 days is outweighed by the virtually nonexistent risk of an erroneous determination and by the strong public interest in halting this costly litigation and in deterring Sassower's continued abuse of our legal system. Moreover, the opportunity for a hearing that was afforded was appropriate under the circumstances.
 
 
 29
 First, Sassower received adequate notice when he was served with a notice of motion and supporting papers that clearly informed him in detail of the nature of the charges, the facts underlying them, the possible penalties, and the results of his failure to appear.
 
 
 30
 Sassower was also given a reasonable opportunity to be heard, an opportunity that he chose to pursue by filing three cross-motions and four affidavits in opposition to the contempt motion. Although he pled not guilty, Sassower never denied filing the papers offered in support of the contempt charges. Indeed, his response to the contempt motion merely reasserted his untenable procedural claims and his refusal to yield to the authority of any court.
 
 
 31
 We agree with New York cases holding that where the affidavits in a contempt proceeding raise a disputed issue of material fact, due process requires an evidentiary hearing. See Ingraham v. Maurer, 39 A.D.2d 258, 334 N.Y.S.2d 19 (3d Dep't 1972) (criminal contempt); State University of New York v. Denton, 35 A.D.2d 176, 316 N.Y.S.2d 297, 303 (4th Dep't 1970) (criminal contempt); New York v. East Coast Auto, 123 Misc.2d 209, 472 N.Y.S.2d 1010, 1013 (Sup.Ct.N.Y.Co.1984) (civil and criminal contempt). See also Agur v. Wilson, 498 F.2d 961, 965 (2d Cir.) (rejecting appellant's challenge to the constitutionality of New York's civil contempt statutes on the ground that they allow the court to hold the defendant in contempt without a hearing and noting that New York courts generally construe them to require a hearing where the affidavits reveal a genuine issue of fact), cert. denied, 419 U.S. 1072, 95 S.Ct. 661, 42 L.Ed.2d 669 (1974). Nevertheless, where it is clear from unchallenged documentary evidence before the court that the defendant has continually and wilfully disobeyed court orders, a full-blown hearing is not required before the defendant may be held in contempt under N.Y.Jud.L. Sec. 751. See 472 N.Y.S.2d at 1012.
 
 
 32
 Sassower had a reasonable opportunity to raise a triable issue of fact or to dispute the documentary evidence presented by the receiver, but he wilfully failed to do either. In this case an evidentiary hearing was not only unnecessary, but would have provided Sassower with but a further opportunity to prolong, manipulate, and abuse the judicial process.
 
 
 33
 Furthermore, even if Sassower would have been entitled to an evidentiary hearing, he waived that right by failing to appear. The standard applicable to waiver of a constitutional right in a criminal proceeding is that it be voluntary, knowing, and intelligently made. Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1468, 25 L.Ed.2d 747 (1970). See Boddie v. Connecticut, 401 U.S. 371, 378-79, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971) ("the hearing required by due process is subject to waiver"), cited in Overmyer Co. v. Frick Co., 405 U.S. 174, 185, 92 S.Ct. 775, 782, 31 L.Ed.2d 124 (1972) (due process rights to notice and hearing are waivable in both civil and criminal contexts). The Brady standard for waiver was clearly satisfied in this case.
 
 
 34
 First, since Sassower was an attorney, surely he was aware, by virtue of his experience and education, of the consequences of nonappearance. In addition, the notice of motion that Sassower received explicitly warned him of the consequences of his failure to appear before the referee. His failure to appear was therefore knowing and intelligent.
 
 
 35
 Second, Sassower's waiver of his right to a hearing was voluntary. There is no suggestion in the record that his nonappearance was the result of threats, violence, or undue influence. See Brady, 397 U.S. at 753, 90 S.Ct. at 1471 (citing Bram v. United States, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897)). His failure to appear in three prior contempt proceedings has resulted in adjudications against him, see Transcript of proceedings before Magistrate Gershon at 23, Sassower v. Sheriff of Westchester Co., 86 Civ. 7403 (S.D.N.Y. Nov. 24, 1986), and he has repeatedly refused to appear before Referee Diamond. This is not a case where the defendant cannot be said to have voluntarily waived a right because he was unaware of either the duties imposed by the court's orders or the consequences of nonappearance. See Holtzman v. Beatty, 97 A.D.2d 79, 468 N.Y.S.2d 905, 907-08 (2d Dep't 1983). In light of this record, Sassower's demand for a "speedy trial" and "a plenary hearing, with the aid of subpoenas" is empty and manipulative rhetoric.
 
 
 36
 We reject the district court's conclusion that Sassower's conviction was not supported by a finding of guilt beyond a reasonable doubt. The referee analyzed in detail both the evidence supporting the motion and Sassower's objections, and concluded that no issue of fact was raised. His report, which was confirmed by Judge Evans when he held Sassower in criminal contempt, was clearly a determination of guilt beyond a reasonable doubt as required by Bloom, 391 U.S. at 205, 88 S.Ct. at 1484. In the context of this record, we give no weight to the fact that the express words "guilt beyond a reasonable doubt" were not used.
 
 
 37
 We agree with the New York Appellate Division that "[i]t is well settled that criminal contempt is established when there is a clear and definite order of the court, the contemnor knows of the order, and he willfully disobeys it." Holtzman v. Beatty, 468 N.Y.S.2d at 907 (citing United States v. Powers, 629 F.2d 619, 627 (9th Cir.1980); Chapman v. Pacific Tel. & Telegraph Co., 613 F.2d 193, 195 (9th Cir.1979)). This case presents the most unequivocal establishment of criminal contempt that this court can imagine.
 
 
 38
 Simultaneously with filing this opinion, we have denied Sassower's motion for affirmance in light of Young v. United States ex rel. Vuitton et Fils S.A., --- U.S. ----, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), because the plurality decision in that case does not control Sassower's state court contempt proceeding. In Young, the Court exercised its supervisory power over federal prosecutions in the federal courts and held that counsel for a party that is the beneficiary of a court order may not be appointed by a federal court to prosecute a contempt action based on an alleged violation of that order. Id. at 2130, 2139. Only one Supreme Court justice thought that a constitutional question was raised in Young. See id. at 2141 ("I would go further * * * and hold that the practice--federal or state--of appointing an interested party's counsel to prosecute for criminal contempt is a violation of due process.") (Blackmun, J., concurring).
 
 
 39
 Furthermore, even if Young applied to state contempt proceedings, it is distinguishable on its facts. While reaffirming the authority of courts to initiate prosecutions for nonsummary criminal contempt, id. at 2134, the Court concluded that it was a fundamental error that "undermines confidence in the integrity of the criminal proceeding," id. at 2139, for a court to appoint an attorney for an interested party as a special prosecutor where that prosecutor exercises broad discretion to decide (1) who and how to investigate; (2) what evidence to gather; (3) who to call as a witness and who to charge with what offense; (4) whether and on what terms to enter into plea bargains; and (5) who should receive immunity. In this case, the attorney for the receiver merely moved for an order holding Sassower in contempt and notified him that he was required to appear before the referee. Thus, this case does not involve the appointment of a special prosecutor by the court, but simply concerns the routine New York State practice of bringing contempts to the attention of the court by motion. No investigation or other prosecutorial activity was required, because the court already had before it all the facts needed to establish Sassower's commission of the multiple contempts.
 
 
 40
 We are also denying Sassower's second motion for summary affirmance. The motion is frivolous and for making it we impose a sanction on Sassower, pursuant to Fed.R.Civ.P. 11, in the sum of $250 to be paid to the clerk of the second circuit and we direct the clerk to refuse to file or process any new appeals or proceedings submitted by Sassower until the sanction has been paid.
 
 
 41
 The State of New York has raised the issue of whether the district court lacked jurisdiction to entertain the habeas corpus petition because Sassower's custodian was not named as respondent. Although the general rule is that the person who holds the prisoner in custody must be named as respondent, see Billiteri v. United States Board of Parole, 541 F.2d 938, 948 (2d Cir.1976), rigid adherence to technical requirements is not mandated in this case. See Demjanjuk v. Meese, 784 F.2d 1114 (D.C.Cir.1986) (Bork, J., in chambers) (refusing to transfer habeas petition for lack of jurisdiction over actual custodian and denying petition on merits). Cf. Granberry v. Greer, --- U.S. ----, 107 S.Ct. 1671, 95 L.Ed.2d 119 (1987) (interests of comity and judicial efficiency may be served if circuit court disposes of nonmeritorious petition without reaching nonexhaustion issue). Because we have determined that the petition should be denied, it is unnecessary to encourage Sassower to bring yet another meritless petition by dismissing this one on technical grounds.
 
 
 42
 The judgment of the district court granting Sassower's petition for habeas corpus relief is reversed and the case is remanded to the district court with a direction to deny the petition.