**In re SASSON JEANS, INC., d/b/a Sasson Industries and Sasson, Debtor.**

Civ. No. M–43(MEL).

United States District Court,
S.D. New York.

May 13, 1988.

Cole & Deitz, New York City, for trustee; Edward N. Meyer, Jeanne M. Murphy, of counsel.

Zalman & Schnurman, New York City, for respondent; Evan Sarzin, of counsel.

LASKER, District Judge.

This proceeding involves a review of a certification of contempt of January 11, 1988 of Judge Burton R. Lifland of the Bankruptcy Court of the Southern District of New York pursuant to Bankr.R. 9020 and 9033.[1] 83 B.R. 206. The certification

---

1. Bankr.R. 9020 and 9033 provide that contempt not committed in the bankruptcy judge's presence may be punished after notice and a hearing and that proposed findings of fact and conclusions of law be certified to the district court.

The district court, upon conducting a de novo review, may accept, reject, or modify the bankruptcy judge's proposed findings of fact and conclusions of law. 11 U.S.C.A. Rules 9022, 9033 (West Supp.1988).

includes findings that Paul Guez, formerly the President, Chief Executive Officer, Chief Financial Officer, and sole stockholder of the debtor, Sasson Jeans, Inc. ("Sasson"), and Cheryl Adair, a business associate of Guez's, disobeyed court orders and recommends that they be incarcerated for a fixed term for criminal contempt. This opinion addresses only the proposed findings of facts and conclusions of law specific to Adair.

## Background

On November 10, 1987, Judge Lifland ordered that certain books and records belonging to the debtor, then located in Vernon, California, be sealed and preserved. With the agreement of counsel for the debtor and trustee, Guez was permitted to ship the documents to New York, to be delivered in locked and sealed trucks to the Morgan–Manhattan Warehouse on West 21st Street in New York. Adair, working with the trustee's counsel, coordinated the shipment of the documents, hiring the trucks and drivers to pick up and deliver the documents. On November 25, 1987, based on the trustee's representation that the trucks were in New York, but not at the warehouse, Judge Lifland ordered the U.S. Marshalls to seize the two trucks containing the writings. One truck, locked and sealed, was found at Guez's residence at One Whitney Lane, Old Westbury, New York. The second was located close to the U–Haul yard on 22nd Street, near 11th Avenue; the locks were clipped. There is no dispute that Adair knew the terms of Judge Lifland's order and that she participated in the transportation of the documents to New York and the ultimate delivery of one of the trucks to Guez's residence.[2]

On December 1, 1987, Judge Lifland ordered that "Paul Guez and Cheryl Adair each show cause ... why this Court should not certify ... that an order should be entered adjudging Paul Guez and Cheryl Adair to be in criminal contempt of this Court...." The order directed the U.S. Marshall to serve Adair personally at Guez's residence; both the trustee and bankruptcy court had received a telegram from Adair within the preceding three days signed "Cheryl Adair 1 Whitney Lane Old Westbury NY 11568." After personal service was unsuccessfully attempted on three occasions on December 5–6, Judge Lifland, on December 7, 1987, signed an order authorizing service by overnight mail to Adair at Guez's home. The order mentioned no alternative place of service, although in her deposition of October 9 and 14, 1987, when asked her residence by the counsel for the trustee, Adair stated that she was currently residing at "523 North Leaf, West Covina, California."

On the return date, Adair was neither present nor represented. In his certification of contempt, Judge Lifland concluded, based on the testimony presented at the hearing,

> With respect to Cheryl Adair, I have taken into consideration her willful and conceded noncompliance with the orders of this Court, her involvement in the September taking of the assets from the California warehouse ... and her apparent willingness to do Mr. Guez' bidding even if it is patently unlawful. For this reason, the Court recommends that Ms. Adair be imprisoned for 30 days.

Judge Lifland's opinion, like the order to show cause, was sent to Adair only at Guez's home address.[3] Adair maintains that she first received a copy of the certification of contempt on February 8, 1988 and that she did not receive the order to show cause until March 8, 1988, after she had requested a copy from the trustee.

Adair objects to the certification of contempt, arguing that the service of the order to show cause on her at Guez's home satisfied neither the bankruptcy rules nor the due process requirements of the 14th Amendment, because she was denied rea-

---

**2.** Adair disputes, however, whether in so doing she was willfully disobeying the court order.

**3.** By stipulation, certification of the January 11, 1988 proposed findings of fact and conclusions of law was stayed pending resolution of another charge of contempt against Guez, which was certified on February 25, 1988.

sonable notice of the hearing.[4] Adair contends that, because of the inadequacy of service, the contempt proceedings against her should be dismissed or, in the alternative, a de novo hearing should be held. The trustee, in response, maintains that the service to Adair at Guez's residence comported with the bankruptcy rules and due process and that, moreover, Adair's objections, including the objection that service was inadequate, are untimely.

### Service

■ The question of what rule governs the form of service required in a criminal contempt arising in a bankruptcy proceeding appears not to have been addressed. Judge Lifland, in the certification at issue, evaluated the sufficiency of service under the standards of 1) Bank.R. 7004(b), 2) Fed. R.Crim.P. 42(b), which incorporates Fed.R. Civ.P. 5, *United States v. Lujan*, 589 F.2d 436, 438 n. 1 (9th Cir.1978), *cert. denied*, 442 U.S. 919, 99 S.Ct. 2842, 61 L.Ed.2d 287 (1979), and 3) the due process clause of the 14th Amendment and concluded that service met the requirements of these three standards. I conclude that the service made did not satisfy the applicable standards.

Bankr.R. 7004, which applies to contested bankruptcy matters,[5] authorizes service as provided in Fed.R.Civ.P. 4(a), (b), (c)(2)(C)(i), (d), (e) and (g)-(j). It also authorizes service by first class mail sent "to the individual's dwelling house or usual place of abode or to the place where the individual regularly conducts a business or profession." 11 U.S.C.A. Rule 7004 (West Supp. 1988). Fed.R.Civ.P. 5 states that service "shall be made by delivering a copy to the ... party or by mailing it to the ... party at the party's last known address...."

It cannot reasonably be argued that Guez's residence was either Adair's "dwelling house or usual place of abode" within the meaning of Bankr.R. 7004 or her "last known address" as that term is used in Fed.R.Civ.P. 5(b). In her deposition of October 9, Cheryl Adair, when asked, "Are you also temporarily residing in New York State?", answered, "Yes." To the next question, "Where are you temporarily residing?", she replied, "I haven't decided. I have no idea."[6] In her deposition of October 14, Adair, when asked "Where are you staying in New York?", replied, "With friends." Upon further inquiry, when asked if the friend with whom she was staying "reside[s] at the same place Mr. Guez does?", Adair answered, "Yes."[7] These exchanges, however, simply do not suffice as a basis from which to conclude that Guez's residence was either Adair's "usual place of abode" or "last known address". On both October 9 and 14th, Adair answered the question, "Where do you presently reside?" as follows: "523 North Leaf Street, West Covina, California."[8]

In neither of the two telegrams sent by Adair that reflect Guez's address did Adair state or otherwise indicate that her address had changed or that she was then residing at One Whitney Lane. The address on the telegrams merely indicated the place of Adair's presence at the time the telegrams were sent,[9] information which was not a sufficient basis upon which to conclude that the address stated in her deposition had changed. *See United States v. Men-*

---

4. Because I conclude that the case must be remanded and a hearing held, it is not necessary to address now Adair's objections to specific proposed findings of fact in the certification.

5. The parties do not dispute that this is a contested matter, as that term is used in bankruptcy proceedings. *See* 11 U.S.C.A. Rule 9014 (West Supp.1988).

6. Examination of Cheryl Adair of October 9, 1987 at 4.

7. Examination of Cheryl Adair of October 14, 1987 at 4-5.

8. Examination of Cheryl Adair of October 9, 1987 at 4; Examination of Cheryl Adair of October 14, 1987 at 3.

9. According to Adair's papers, Adair stayed at Guez's residence until December 3 when, unbeknownst to the trustee, she returned to California. She maintains that on December 3, 1987 she spoke with William Goldman, an attorney for the trustee, in person in California, an exchange that should have alerted the trustee to her return to California. Memorandum of Law as to the Issue of Service and the Timeliness of Objections at 5-6 (March 30, 1988).

*sik,* 57 F.R.D. 125, 127 (M.D.Pa.1972) (interpreting "usual place of abode" to mean the permanent residence of the party). *Cf. Triad Energy Corp. v. McNell,* 110 F.R.D. 382, 385–6 (S.D.N.Y.1986) (holding that service of children at aunt's house did not satisfy requirement that service be made at defendants' actual dwelling place or usual place of abode, because they were not, according to sworn affidavits, living there at time and stating it was irrelevant whether they had ever resided with the aunt).[10]

Moreover, there is a serious question whether service by mail only to Guez's Old Westbury address comports with due process. In *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), dealing with the adequacy of notice by publication to class members, the Court ruled that notice must be reasonably calculated to appraise the parties of the action pending.

> The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes.

339 U.S. at 315, 70 S.Ct. at 567–58 (citations omitted). The method of notice specified in the order of December 7, 1987 in this case did not meet *Mullane's* requirements. It was not "reasonably certain" that service at Guez's address and that address alone would apprise Adair of the allegations in the order to show cause. Notice by overnight mail, sent to both the Old Westbury, New York, and the West Covina, California, addresses, would be more likely "to bring home notice," without imposing upon the trustee or the court any significant additional expense or inconvenience. *Id.* at 317–18, 70 S.Ct. at 658–59.

The penalty Adair faces is serious: The certification recommends a 30 day term of imprisonment for criminal contempt.

"[T]he burden of imprisonment ... fosters the need for procedural protection." *Dole Fresh Fruit Co. v. United Banana Co., Inc.,* 821 F.2d 106, 110 (2d Cir.1987) (vacating civil contempt against individual appellants because they had not received notice that they were defendants in contempt proceeding and they lacked adequate time to prepare defense) (quoting *In re Di Bella,* 518 F.2d 955, 959 (2d Cir.1975)). I conclude that service on Adair at Guez's residence alone was insufficient.

### Timeliness

■ The trustee contends that Adair's objections to the certification of contempt, including the objection to service, are untimely and therefore cannot be considered. Bankr.R. 9033(b) specifies the time within which objections to certifications are to be made.

> Within 10 days after being served with a copy of the proposed findings of fact and conclusions of law a party may serve and file with the clerk written objections which identify the specific proposed findings or conclusions objected to and state the grounds for such objection.

11 U.S.C.A. Rule 9033(b) (West Supp.1988). Although the rules governing bankruptcy proceedings generally permit extensions within the discretion of the court, *see,* Bankr.R. 9006(b), in the case of objections to a contempt certification, the rules restrict the permissible extension.

> The bankruptcy judge may for cause extend the time for filing objections by any party for a period not to exceed 20 days from the expiration of the time otherwise prescribed by this rule. A request to extend the time for filing objections must be made before the time for filing objections has expired, except that a request made no more than 20 days after the expiration of the time for filing objections may be granted upon a showing of excusable neglect.

11 U.S.C.A.Rule 9033(c) (West Supp.1987). *See Holloway v. HECI Exploration Co. Employees' Profit Sharing Co.,* 76 B.R.

---

**10.** Although this case revolved around the adequacy of service under New York state law, it is nonetheless relevant to this case as the relevant state statute, like Fed.R.Civ.P. 4, refers to the dwelling place or usual abode.

**340**

563, 571 (N.D.Tx.1987) (failure to file timely objections pursuant to Rule 9033(b) constitutes waiver of Article III judge's de novo review). There is no doubt that Adair did not file objections within 10 days after the certification was mailed nor did she move for an extension in either of the ways provided in Bankr.R. 9033(c).

■ However, as indicated above, the time permitted in Bankr.R. 9033(b) and (c) begins to run from the date of service. Because, as already discussed, the service here was insufficient, the objection cannot be regarded as untimely.[11] If the bankruptcy rules were construed to preclude challenges to the constitutionality of the procedure bringing about the certification of contempt, such a construction would raise questions as to the constitutionality of the rules themselves. *Cf. Peralta v. Heights Medical Center, Inc.,* —— U.S. ——, 108 S.Ct. 896, 900, 99 L.Ed.2d 75 (1988) (reversing Texas court holding that judgment could not be set aside, despite appellant's arguments that he had never been personally served or received notice of judgment, absent proof of a meritorious defense, and stating "[b]y reason of the Due Process Clause of the Fourteenth Amendment, that holding is plainly infirm").

The certification is remanded to the bankruptcy court for a hearing on notice. *See Dole Fresh Fruit Co. v. United Banana Co., Inc.,* 821 F.2d at 111 (remanding contempt proceeding for new hearing having found notice inadequate).

It is so ordered.

---

**11.** Adair, on her first appearance, challenged the adequacy of service and therefore cannot be said to have waived her right to object. Fed.R. Civ.P. 12(h).