## In re SASSON JEANS, INC., d/b/a Sasson Industries and Sasson.

### No. M–43 (MEL).

United States District Court, S.D. New York.

Sept. 6, 1989.

---

Cole & Deitz, New York City, for Trustee; Edward N. Meyer, Jeanne M. Murphy, of counsel.

Judd Burstein, P.C., New York City, for defendant Paul Guez; Judd Burstein, Michael R. Gavenchak, of counsel.

LASKER, District Judge.

This action involves a review of the objections to two certifications of contempt by Judge Burton R. Lifland of the Bankruptcy Court of the Southern District of New York pursuant to Bankr.R. 9020 and 9033.[1] The certifications occurred in the

---

1. Bankruptcy Rules 9020 and 9033 provide that contempt not committed in the bankruptcy judge's presence may be punished after notice and a hearing and that proposed findings of fact and conclusions of law be certified to the district court. The district court may accept, reject, or modify the bankruptcy court's proposed findings of fact and conclusions of law to which

proceedings in bankruptcy of Sasson Jeans, Inc. ("Sasson"). The defendant, Paul Guez, was the President, Chief Financial Officer, and sole stockholder of Sasson until a trustee was appointed pursuant to 11 U.S.C. § 704 to manage the debtor company. At issue are the findings of fact and conclusions of law on the two motions of the trustee requesting orders finding Paul Guez in criminal contempt of orders issued to facilitate the orderly management of the bankruptcy.

In his decision of December 2, 1987, which was supplemented by the findings and conclusions of the opinion of February 25, 1988 ("first certification"),[2] Judge Lifland found Guez to have willfully violated his orders of July 30th and August 5th directing that assets of the debtor company be turned over to the trustee. *In re Sasson Jeans, Inc.*, 80 B.R. 289 (Bankr.S.D.N.Y.1987) ("*Sasson I*"), *In re Sasson Jeans, Inc.*, No. 86 B 12438 (Bankr.S.D.N.Y.1988) ("*Sasson II*"). Specifically, after the initial and supplemental hearings,[3] the court concluded that the trustee had established beyond a reasonable doubt that Guez had knowingly and willfully "attempted to secrete a substantial portion of the Debtor's assets by moving them from California to ... Brooklyn,"[4] 83 B.R. at 297, and that there was no credible evidence indicating that Guez had a good faith basis to believe the property was his, slip op. at 15. Judge Lifland found Guez to be in criminal contempt and recommended a fixed sentence of 60 days.

In the second certification, the court found that the trustee had proven beyond a reasonable doubt that Guez had knowingly and willfully violated the court's orders of November 10, 11, and 25, 1987 which required Guez to seal and preserve documents of the debtor located at the time in California.[5] The court concluded that Guez had violated the orders by interfering with the storage arrangements for the documents, taking custody of the trucks in which the documents were being transferred, and refusing when ordered to redeliver them to the trustee.[6] *In re Sasson Jeans*, 83 B.R. 206, 220 (Bankr.S.D.N.Y.1988) ("*Sasson III*"). A sentence for a fixed term of four months was recommended.

Guez poses innumerable challenges to the two certifications, only one of which is addressed in this decision because I find it dispositive. For the reasons discussed below, I find persuasive Guez's argument that the trustee's prosecution of the two alleged contempts violates the rule of *Young v. U.S. ex rel Vuitton et Fils, S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), that an "interested party" shall not prosecute a criminal contempt.[7]

## DISCUSSION

### A. Timeliness

The trustee disputes not only the merits, but also the timeliness of Guez's argument.

---

specific objections are made, after reviewing those findings and conclusions de novo. 11 U.S.C. Rules 9020, 9033.

2. The decision of December 2, 1987 was certified to the district court. After a hearing on the matter, Judge Leisure remanded the case to the bankruptcy court for a further hearing addressing the ownership of the property at issue.

3. Guez was represented by counsel at the first hearing, but appeared *pro se* at the remand hearing.

4. The assets were valued at over $2 million and included office equipment and furniture, records and inventory belonging to Sasson and under the label of "SJI," "Sasson," or "Jag."

5. At the hearing, Guez's counsel, but not Guez, was present.

6. Guez's business associate, Cheryl Adair, was also found to have willfully violated the court orders. The certification as to Adair was remanded to the bankruptcy court for a hearing on notice, because the service to Adair was found to be ineffective. *In re Sasson Jeans, Inc.*, 86 B.R. 336 (S.D.N.Y.1988).

7. In addition to arguing that the trustee was improperly appointed to prosecute the contempts, Guez contends that an evidentiary hearing is necessary to determine whether he was competent at the time to assist counsel and to proceed *pro se;* he urges the court to receive further evidence, as permitted by Bank.R. 9033, addressing the effect of Guez's cocaine addiction on his belief that he was not violating court orders, as well as to hear additional evidence relevant to the first certification; and he poses challenges specific to the conclusions of law of each certification.

There is no question that Guez's objections to the certifications were not made within 10 days of their service, as required by Rule 9020(c) to preserve de novo review, nor did Guez timely seek an extension of time to file objections and thus satisfy the terms of Rule 9033(c).[8] However, as I have repeatedly advised counsel, although Guez's objections were not filed within the time specified, the objections shall be accorded full consideration.[9]

As the trustee acknowledges, Rule 9020(c) parallels Fed.R.Civ.P. 72, which governs the timeliness of objections to the recommendation of a magistrate. Failure to file timely objections pursuant to Rule 72(b) has been held to constitute a waiver of further judicial review. *Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58 (2d Cir. 1988) (collecting cases). However, the court retains the discretion to grant a motion to extend the time to file objections, even if the time for filing has passed, if "the failure to act was the result of excusable neglect." Fed.R.Civ.P. 6(b). Similarly, Rules 9006(b) and 9033(c) of the Bankruptcy Rules permit enlargement of the time in which to file objections where the failure to act was the result of excusable neglect. Although neither Guez nor his counsel made such a motion, counsel, once appointed, requested and was granted an extension of time to file objections.

The facts as presented to the court provided a basis for concluding that the failure to act was the result of excusable neglect, as that term is understood. This is not a case in which the objections were untimely because counsel was busy with other litigation. *McLaughlin v. La Grange*, 662 F.2d 1385, 1387 (11th Cir.1981) (per curiam), *cert. denied*, 456 U.S. 979, 102 S.Ct. 2249, 72 L.Ed.2d 856 (1982). Guez was unrepresented by counsel when the contempts were certified and a conference initially scheduled before this court.[10] Moreover, Guez stated under oath at his first appearance before this court that he could not afford counsel, thus indicating that the circumstance responsible for the delay was one beyond his reasonable control.[11] *In re O.P.M. Leasing Services, Inc.*, 48 B.R. 824, 830 (S.D.N.Y.1985) (excusable neglect exists when party fails to meet obligation due to unique or extraordinary circumstances beyond the reasonable control of the delinquent party).

It is true that Guez did not seek an extension within twenty days after the time to file objections had expired as required by Rule 9033(b); however, it is also true that he was not represented by counsel during those twenty days and that counsel, once appointed, immediately sought a stay of the time to file objections pending a decision as to Guez's competence to stand trial. A strict construction of the twenty day limitation would raise constitutional problems where, as would be true in this case, it would be used to bar Guez's right

8. Rule 9033(c) states:
The bankruptcy judge may for cause extend the time for filing objections by any party for a period not to exceed 20 days from the expiration of the time otherwise prescribed by this rule. A request to extend the time for filing objections must be made before the time for filing objections has expired, except that a request made no more than 20 days after the expiration of the time for filing objections may be granted upon a showing of excusable neglect.

9. Counsel for the trustee and Guez stipulated to an extension of time for Guez to object to the certification of January 11, 1988 until February 23, 1988. Stipulation with Respect to District Court Review of the Certificates of Contempt, No. 86–B–12438 (dated Jan. 29, 1988). The supplemental findings and conclusions were served by mail on February 25, 1988 and Guez made

no formal request for an extension. No objections had been filed as of April 1, 1988, when Guez appeared *pro se* before this court. Counsel was appointed, and in his first communication requested an examination of Guez's competency and an extension of the time for filing objections until the examination was complete. Letter of Martin Siegel of April 15, 1988. The request was granted. Because of intervening factors, such as other trials to which Guez was a party and his stay in a residential drug treatment program, objections to the two certifications were filed only on September 16, 1988.

10. Guez appeared *pro se* at the supplemental hearing on February 10, thus indicating that he was without counsel before the time for filing objections had expired.

11. Transcript of Conference, *In re Sasson Jeans*, M–43 (MEL) (Apr. 1, 1988).

to appeal and review by an Article III court, where the defendant was, during the relevant time period, without the counsel to which he is constitutionally entitled. *Cf. Herring v. New York*, 422 U.S. 853, 857–58, 95 S.Ct. 2550, 2552–53, 45 L.Ed.2d 593 (1975) (right to counsel meant to ensure defendant opportunity to participate fully and fairly in proceeding); *Blunt v. Wolff*, 501 F.2d 1138, 1141 (8th Cir.1974) (defendant denied effective appeal if not represented and thus decision is nullity).

■ Exercising the discretion of the court, I conclude that this suffices to constitute excusable neglect, particularly where the trustee has not alleged any resulting prejudice.[12] *See In re O.P.M. Leasing Services, Inc.*, 48 B.R. at 831 (prejudice is one factor to consider when determining if delay is excusable). *Cf. Davidson v. Keenan*, 740 F.2d 129, 132 (2d Cir.1984) (determination whether neglect is excusable rests within sound discretion of district court). Moreover, although not determinative, the lack of explicit notice of the time limit for filing objections provides an additional basis for construing Guez's belated request to file objections liberally, *see Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985) (rule conditioning appeal of magistrate's recommendations on timely objection does not violate constitution "at least when it incorporates clear notice to the litigants and an opportunity to seek an extension of time for filing objections"); *cf. Wesolek v. Canadair Ltd.*, 838 F.2d 55, 58–59 (2d Cir. 1988) (although it would be preferable for magistrate's report to state objection requirements, failure to do so did not constitute lack of notice because waiver rule had been in effect for several years), as does the evidence that establishes that Guez was

fairly regularly under the influence of drugs during the period in question.

## B. Merits

Guez contends that *Young v. United States ex rel. Vuitton Et Fils, S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987), compels rejection of the certificates of contempt because the counsel for the trustee is "an interested party" and thus was not properly appointed to prosecute these contempts. Judge Lifland rejected this argument because the trustee, who is appointed by a member of the Department of Justice, "as a fiduciary vested with a public trust, lacks the characteristics of 'interestedness' and the attendant potential for personal gain which tainted the prosecuting party in *Young.*"[13] *Sasson III*, 83 B.R. at 217 n. 5. Because the question is close—the facts of the case being distinguishable from those of *Young* and its progeny—the limited law that exists on point is discussed below in detail.

The Court in *Young* reversed the convictions of criminal contempt based on its holding, "in the exercise of [its] supervisory power, that the court erred in appointing as prosecutors counsel for an interested party in the underlying civil litigation".[14] 481 U.S. at 802, 107 S.Ct. at 2135. Justice Brennan writing for the court concluded that, because criminal contempt proceedings involve challenges to the integrity of the court and are thus matters between the public and the defendant, "[a] private attorney appointed to prosecute a criminal contempt therefore certainly should be as disinterested as a public prosecutor who undertakes such a prosecution." *Id.* at 804, 107 S.Ct. at 2136. More specifically, the court stated that "counsel for a party that is the beneficiary of a court order may not be appointed to undertake contempt prosecutions for alleged violations of that or-

---

12. In addition, counsel's question as to Guez's competence to assist counsel provided cause for deferring the filing of the objections.

13. The issue of the trustee's appointment was not addressed in *Sasson I*.

14. The plurality, which consisted of four justices, concluded that the harmless error doc-

trine does not apply where, as in this instance, the contempt prosecutor is counsel for an interested party. Three justices dissented from that portion of the opinion. Justice Scalia concurred in the judgment, but on the ground that the court lacks the authority to appoint a private party to act as a prosecutor. Justice White dissented.

der." [15] *Id.* at 790, 107 S.Ct. at 2128.

Applying the standard to the facts before it, the *Young* Court concluded that the prosecuting party was in fact a beneficiary of the order. Vuitton, the party that prosecuted the contempt, had previously sued the defendants in the contempt proceedings for trademark infringement. The suit resulted in a permanent injunction and consent decree in favor of Vuitton. Vuitton subsequently sought and was granted permission to prosecute the defendants for criminal contempt, based on the results of an undercover sting operation conducted by a retained investigation firm. The Court found this appointment improper.

The Court emphasized that the consent decree's liquidated damages of $750,000 for violation of the injunction "had the potential to influence whether Young was selected as a target of investigation, whether he might be offered a plea bargain, or whether he might be offered immunity in return for his testimony." *Id.* at 805, 107 S.Ct. at 2136. In addition, others successfully prosecuted for criminal contempt were parties to civil actions, both as plaintiffs against the prosecuting counsel or defendants to actions initiated by Vuitton. The Court reasoned that the pendency of these suits created the possibility that the criminal prosecution would be used to obtain information useful for those suits. *Id.* at 806, 107 S.Ct. at 2137. Finally, the Court emphasized that the appointment of counsel for an interested party "at a minimum created *opportunities* for conflicts to arise, and created at least the *appearance* of impropriety." *Id.* (footnote omitted) (emphasis in the original).

The Court's opinion does not attempt to specify particular circumstances which would be determinative as to whether a counsel is "interested" so as to disqualify her or him from acting as the prosecutor of the criminal contempt, beyond its applica-

tion of the standard to the facts at hand. Nor do cases applying *Young* offer much guidance.

For example, in *Person v. Miller*, 854 F.2d 656 (4th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 1119, 103 L.Ed.2d 182 (1989), the court rejected the defendant's argument that his conviction for criminal contempt was improperly obtained, because counsel for the plaintiff to the underlying case initiated the action and later acted as special counsel to a prosecutor from the Justice Department. The *Person* court found the role of private counsel did not constitute reversible error, because, while *Young* "flatly proscribes turning the prosecution completely over to private counsel for interested parties, ... it certainly did not proscribe all participation by such counsel." *Id.* at 663. Because the court relied for its holding on the limited nature of the counsel's role, it did not address whether the party represented by the private counsel was in that instance "interested" within the meaning of *Young.*

*Sassower v. Sheriff of Westchester County,* 824 F.2d 184 (2d Cir.1987), upon which the trustee relies, similarly offers limited guidance. In that case, the court rejected the argument that *Young* compelled reversal of the appellant's conviction for criminal contempt. Sassower had filed a habeas petition in federal court, alleging that his state conviction for criminal contempt for violation of orders prohibiting him from pursuing or initiating any litigation related to Puccini Clothes, Ltd. violated his constitutional rights. [16] The criminal contempt proceeding in question was initiated by the receiver for Puccini. The court held that *Young* did not apply to the proceeding, because *Young* was premised on the Supreme Court's supervisory power over federal proceedings and was thus inapplicable to state proceedings. *Id.* at 191. Moreover, even if *Young* had applied, the

---

**15.** The court also indicated that the power to appoint private counsel to prosecute a contempt should be used cautiously: "[A] court ordinarily should first request the appropriate prosecuting authority to prosecute contempt actions, and should appoint a private prosecutor only if that request is denied." *Id.* at 801, 107 S.Ct. at 2134.

**16.** Sassower, on behalf of a disgruntled shareholder of Puccini, had initiated innumerable actions.

court found that it was distinguishable because the case before it did not require an investigation or other prosecutorial activity, including gathering evidence, calling witnesses, deciding upon the appropriate charges, and deciding whether to grant immunity. Instead, the receiver merely moved for an order of contempt and notified Sassower that he was to appear before the trustee. *Id.*

Most recently, in *FTC v. American Nat'l Cellular,* 868 F.2d 315 (9th Cir.1989), the court held that *Young* did not compel reversal of the appellant's contempt conviction, which was prosecuted by the FTC and arose out of a suit brought by the agency. The court concluded that *Young* was not controlling, in large part because it was not persuaded that the FTC was the equivalent of a private party rather than part of the executive branch. *Id.* at 318–19. The court emphasized, however, that under certain circumstances, government counsel could lack the appearance of and actual impartiality necessary to preserve the integrity of the system. As the court stated, the vigor of advocacy may

> cloud the attorneys' ability to distinguish between contempt prosecutions that further their purported primary objective—compliance with the court's order—and those that are driven by a primary motive to further the goals of the underlying litigation. For example, the government attorneys may be tempted to pursue a nonmeritorious contempt prosecution because the prosecution would allow them to obtain documents or access to information useful in the underlying civil litigation. They may also be tempted to abandon, press or compromise a prosecution wholly apart from its merits to leverage settlements in the underlying litigation. If their perspective is colored by involvement with the underlying civil action, then they more closely resemble the "interested parties" in *Vuitton* than impartial U.S. Attorneys.

*Id.* at 319.

The *FTC* court noted two factors as relevant to the determination whether participation of counsel from the federal agency

compromised the principles to be preserved by the ruling of *Young:* first, the involvement of the United States Attorney's office, and second, the extent of the particular attorney's involvement in the underlying civil litigation. *Id.* at 320. In the facts of the case before it, the FTC had consulted with the United States Attorney's office before initiating the action; the office concurred in the appointment of counsel and entered an appearance at the hearing. Moreover, the attorneys most involved in the civil suit were not involved in the contempt action.

■ Although several factors emerge from these cases to illuminate the application of *Young* to the case at hand, the primary consideration remains the nature of the prosecuting party's interest in the proceeding. In this case, the trustee's interest in the proceeding does not rise to the level of that of the prosecuting party in *Young* but neither is his role as disinterested as the bankruptcy court suggests. In the case at hand, counsel for the trustee acknowledged that the trustee's fee is contingent on the amount of the estate recovered and that counsel is paid by the hour. Although the trustee, according to statements of record, gained nothing from the prosecutions, *Young* was concerned not with actual prosecutorial impropriety, but with "the *potential* for private interest to influence the discharge of public duty." 481 U.S. at 787, 107 S.Ct. at 2126 (emphasis in the original). Such potential presented itself with the trustee's prosecution of the case. For example, the first certification for contempt addressed the ownership of approximately $2 million of inventory that the trustee alleged was that of the debtor and Guez alleged was his and thus created potential financial interest for the trustee in the prosecution.

Moreover, the concern of the *Young* Court was not limited to financial interest. The Court found that the parties' involvement in civil suits "theoretically could have created temptation to use the criminal investigation to gather information of use in those suits, and could have served as bargaining leverage in obtaining pleas in the

criminal prosecution." *Id.* at 806, 107 S.Ct. at 2137. In the case at hand, in the course of the underlying bankruptcy, the trustee and Guez were engaged in adversary proceedings. As counsel for the trustee stated at the beginning of the hearing of February 10, 1988: "Most of the matters which Your Honor heard since the Trustee was appointed with respect to Sasson Jeans have been litigations involving Mr. Guez." [17] The record is replete with references to litigation between the trustee and Guez, including litigation initiated by Guez to have the trustee removed, by the trustee to determine the ownership of the property in California, and by the trustee ordering Guez not to approach or call the trustee's home, "[it] appearing to the Court that unless restrained by this Court, Paul Guez may cause or threaten to cause physical injury to the trustee and may interfere with and obstruct the activities [of] the Trustee." [18] In fact, the trustee's initial order to show cause sought not only an order adjudging Guez to be in criminal contempt, but also an order finding him in civil contempt for failure to appear for a deposition.[19]

The pendency of these other litigations presented the potential for conflict. For example, the trustee's action to determine the ownership of the property in California involved "evidence ... duplicative of the evidence in the criminal contempt proceeding." [20] Moreover, the criminal proceeding could have been used to exert additional pressure to secure Guez's presence at the deposition that was the subject of the civil contempt, as well as to obtain relevant discovery. In fact, after the trustee moved for the second time for an order finding Guez in criminal contempt, Guez sent to the court a telegram stating that he had been advised by his counsel that counsel could negotiate a settlement of the affairs involving Jag and Sasson Jeans, Inc. if Guez agreed to the following terms:

> 1. I must "disappear." 2. I must drop my lawsuits against both of the trustees. 3. They would drop all criminal charges against me.[21]

Whether or not Guez's understanding was accurate, the scenario reflects precisely the potential for conflict which concerned the Court in *Young*.

There is no dispute that relationships between the trustee and Guez were strained both prior to and after the contempt proceedings. As a review of the matters indicates, Guez was hardly facilitating the smooth management of the bankruptcy hearing. His behavior may very well account for the zealousness with which the trustee prosecuted this action, a zealousness that may not be rooted in an active conflict of interest within the meaning of *Young*, 481 U.S. at 807 n. 17, 107 S.Ct. at 2137 n. 17, but which at least suggests an absence of impartiality that cannot be overlooked. *See FTC*, 868 F.2d at 319. Even counsel for the trustee, in the context of acknowledging that a representative of his office was present throughout two recent criminal trials in which Guez was a defendant, "confess[ed] to more than just curiosity as to Mr. Guez's travails in ... these matters." [22]

The trustee's role as the prosecutor in the case at hand was far closer to that of the prosecuting party in *Young* than in *Sassower*. Although the trustee did not conduct or initiate an undercover investigation and thus can distinguish himself from prosecuting counsel in *Young*, he did call witnesses, and gather and present evidence.

---

17. Hearing on remand of criminal contempt before the Honorable Burton R. Lifland ("Remand Hearing"), *In re Sasson Jeans*, No. 86 B. 12438, at 12 (Feb. 10, 1988).

18. Order Granting Preliminary Injunction Against Paul Guez, *In re Sasson Jeans, Inc.*, No. 86 B 12438 (BRL) (dated Aug. 5, 1987).

19. *See generally* Hearing before the Honorable Burton R. Lifland, *In re Sasson Jeans, Inc.*, No. 86 B 12438 (Nov. 17, 1987).

20. Remand Hearing at 6.

21. Telegram of Paul Guez to The Honorable Burton Lifland (dated Nov. 1, 1980) (included in Record accompanying *Sasson II* ).

22. Transcript of Oral Argument, *In re Sasson Jeans, Inc.*, M–43 (MEL), at 8 (Feb. 17, 1989).

In short, counsel for the trustee has controlled the decisions whether to continue to press or to settle the matter. Thus, unlike counsel in *Sassower,* he did not simply call contemptuous behavior to the attention of the court by means of a motion, nor was his role that of an assistant as in *Person.* Moreover, contrary to the cautions of *Young,* there is no indication that the United States Attorney was first asked to prosecute the contempts.[23] 481 U.S. at 801, 107 S.Ct. at 2134. In fact, as the opinion of January 11, 1988 states, "[t]he December 1 order to show cause *impliedly* appointed Trustee's counsel to prosecute this criminal contempt proceeding." *Sasson II,* 83 B.R. at 216 (emphasis in the original).

Dicta in *United States v. Providence Journal Company,* 485 U.S. 693, 108 S.Ct. 1502, 99 L.Ed.2d 785 (1988), suggest that the Court construes *Young* to require that a court initially request the United States Attorney to prosecute the case. In that case, the Providence Journal was enjoined in a civil suit from publishing logs and memoranda compiled by the FBI in its surveillance of Raymond Patriarca. In the course of the litigation, plaintiff filed a motion to adjudge the Journal in criminal contempt. The Supreme Court, after stating that the plaintiff declined to prosecute the contempt motion, noted that *Young*

> in any event, would have prohibited [plaintiff] from taking such action. In *Young,* we instructed courts to request the United States Attorney to prosecute the criminal contempt charge, and, if the United States Attorney declined, to appoint as a special prosecutor a private attorney other than the attorney for the interested party.

*Id.,* 108 S.Ct. at 1505 n. 3 (citation omitted).

■ It is true that the bankruptcy court's failure to request that the United States Attorney's Office handle the matter is not fatal to the integrity of the prosecution, for the language of *Young* and *Providence Journal* is not mandatory. *Young*

states that the court "ordinarily should first request" the appropriate prosecuting attorney to handle the case, a statement that is construed by *Providence Journal* as an instruction. In neither action did the Court state that the court before which the contempt is to be heard is unconditionally required to make such a request, nor have subsequent lower court cases construed it to say as much.

■ Because the trustee in this case was selected by the United States Trustee, who is him or herself appointed and supervised by the Attorney General, 28 U.S.C. §§ 581–582, it is arguable that, like the counsel in *FTC,* he is not a "private party." However, the analysis of *FTC* does not readily apply to the trustee. In *FTC,* the court held that the argument that the agency was a private party failed in light of earlier holdings that the agency was part of the executive branch. *FTC,* 868 F.2d at 317–19. Even assuming that the United States Trustee is a member of the executive branch, in this instance that alone does not suffice as a basis for concluding that the trustee in this action was not a private party. Unlike the FTC, which is authorized by statute to enforce statutes regulating trade, the United States trustee's statutory duties consist largely of supervising and monitoring ongoing bankruptcy proceedings. Moreover, the statute suggests that enforcement and prosecution are not among the trustee's duties. Section 586(a)(3) states that the trustee shall supervise the administration

> of cases and trustees in cases under chapter ... 11 ... by, whenever the United States Trustee considers it to be appropriate ... (F) notifying the appropriate United States attorney of matters which relate to the occurrence of any action which may constitute a crime under the laws of the United States and, on the request of the United States attorney, assisting the United States attorney

---

23. An Assistant United States Attorney was present at most, if not all, of the hearings. However, he played no role in the proceedings. In fact, at the hearing before Judge Leisure, the Assistant United States Attorney states that his office "will not be taking any position one way or the other in this case." Hearing before the Honorable Peter K. Leisure, *In re Sasson Jeans, Inc.,* No. 86 B 12438 at 2 (Jan. 14, 1988).

in carrying out prosecutions based on such actions.

Thus, to the extent the trustee was acting in this case beyond his specified duties, his status is more analogous to a private person.

\* \* \*

In sum, based on the above analysis and in particular consideration of the trustee's interest and role in the prosecution, I conclude that the trustee in this action was an interested party and thus inappropriately appointed to prosecute these actions. Accordingly, I decline to approve the certified contempts. The question is admittedly close. Because the trustee is appointed by the United States Trustee, the trustee's role in this case is not so clearly one falling within the rationale of *Young*. 481 U.S. at 814, 107 S.Ct. at 2141. The trustee and even the creditors are more remotely the beneficiaries of any potential court order than was true in *Young*. Nevertheless, as discussed above, I do not believe that the appointment of the trustee in this case satisfies the standard announced in *Young* that "[a] private attorney appointed to prosecute a criminal contempt ... certainly should be as disinterested as a public prosecutor who undertakes such a prosecution." *Id.* at 804, 107 S.Ct. at 2136 (footnote omitted).

Moreover, where there is such a serious question of the propriety of the trustee acting in this case as the prosecuting party, questions of judicial economy favor resolution of the issue in favor of the defendant. The remaining objections to the certifications are likely to require additional hearings, hearings that should not proceed without guidance from the court of appeals as to the appropriateness of the trustee acting as the prosecutor and thus of the validity of the underlying certifications.

The certifications are set aside on the ground that the trustee was improperly appointed to prosecute the contempts.

It is so ordered.