## SECURITIES AND EXCHANGE COMMISSION, Plaintiff–Appellee,

v.

## BLINDER, ROBINSON & CO., INC. and Meyer Blinder, Defendants–Appellants.

### No. 86–2319.

United States Court of Appeals, Tenth Circuit.

Aug. 24, 1988.

---

Jacob H. Stillman (Daniel L. Goelzer, Gen. Counsel, Colleen P. Mahoney, Asst. Gen. Counsel, Thomas L. Riesenberg, Sp. Counsel, Robert H. Rosenblum, Atty., Paul Gonson, Sol., of counsel, on the briefs), S.E.C., Washington, D.C., for plaintiff-appellee.

Arthur F. Mathews (Andrew B. Weissman, Steven W. Preston, and Karen A. Getman of Wilmer, Cutler & Pickering, Washington, D.C., Philip E. Lowery, Denver, Colo., and Alan C. Jacobson, Englewood, Colo., with him on the briefs), of Wilmer, Cutler & Pickering, Washington, D.C., for defendants-appellants.

Before MCKAY and BRORBY, Circuit Judges, and PARKER,* District Judge.

BRORBY, Circuit Judge.

Blinder, Robinson and Co., Inc. and Meyer Blinder both appeal the orders of the United States District Court denying appellants' motions to vacate an injunction.

Appellant Blinder, Robinson and Co., Inc. (Blinder, Robinson) is a nationwide broker/dealer in securities. Appellant Meyer Blinder was a founder, and at all times relevant herein, was and is Blinder, Robinson's principal shareholder and president. In 1982, the United States District Court for the District of Colorado, following trial, found the Blinder, Robinson sales force practiced a program of disseminating "deliberately deceptive misinformation," orchestrated by Mr. Blinder. The court specifically found that Mr. Blinder had acted with an "intent to deceive" investors. Based upon these and other findings, the district court entered injunctions prohibiting appel-

---

* The Honorable James A. Parker, United States District Judge for the District of New Mexico, sitting by designation.

lants from engaging in specified practices in violation of various provisions of securities law. The injunctions can be described as ordering appellants to obey the law. Upon appeal, this court affirmed the decision of the district court in an unreported decision in September 1983. Appellants thereafter filed an action against the Securities and Exchange Commission (SEC) seeking an injunction, declaratory relief and damages. This action was predicated in part upon a continuing investigation by the SEC. Another theory of this action was that appellants were represented by incompetent or negligent counsel in the original enforcement action. This court sustained the trial court's decision which denied relief to appellants. *Blinder, Robinson & Co. v. United States Sec. & Exch. Comm'n*, 748 F.2d 1415 (10th Cir.1984), *cert. denied*, 471 U.S. 1125, 105 S.Ct. 2655, 86 L.Ed.2d 272 (1985).

In May 1986, appellants filed a motion with the district court to vacate the injunction. This motion was accompanied by affidavits, exceeding several hundred pages, by which appellant Blinder sought to demonstrate: (1) Blinder, Robinson has grown dramatically and prospered financially; (2) appellants are generous and have supported many philanthropies; (3) most of the key management, with the exception of Mr. Blinder, who remains the president, has been changed; (4) future violations of securities law are highly unlikely due to sweeping changes in personnel and procedures; and, (5) based solely upon the district court's injunction and the underlying findings, eleven states have attempted to sanction Blinder, Robinson, the result of which has taken a toll on the firm, its officers, representatives, employees, and thousands of wholly innocent persons, these innocent persons being Blinder, Robinson's stockholders. The appellee filed nothing contravening the appellants' affidavits.

In July 1986, the district court denied appellants' Motion to Vacate the Injunction finding, *inter alia,* that Mr. Blinder remained in control of Blinder, Robinson and was not fully aware of his own fault in this case; that the court was well aware of the authority of the SEC and the state regula-

tory authorities to take further action based on the injunction at the time the injunction was issued; that demonstrated philanthropy has nothing to do with the case; that no extreme and unexpected harm was shown; and, that the court could not say the public no longer needs the protection of the injunction. The court thereupon entered its order denying appellants' motion to vacate the injunction. Appellants then filed a motion for reconsideration and raised constitutional questions regarding the authority of the SEC to appear before the court as plaintiff. The court denied this motion.

Appellants appeal these rulings of the district court, and claim: (1) the district court applied an excessively rigid standard for the dissolution or modification of the injunction; and (2) the civil prosecution of appellants in this case by the S.E.C., without any participation by the Executive Branch, violated the constitutional doctrine of separation of powers.

We will consider these issues *seriatim.*

## I

### Motion to Vacate Injunction

■ Motions to vacate injunctions lie within the discretion of the trial court, and the disposition below will not be disturbed on appeal in the absence of an abuse of discretion. *Securities & Exch. Comm'n v. Thermodynamics, Inc.,* 464 F.2d 457, 459, (10th Cir.1972), *cert. denied* 410 U.S. 927, 93 S.Ct. 1358, 35 L.Ed.2d 588 (1973). We will examine the issues raised under an abuse of discretion standard.

■ The appellants first argue that the trial court abused its discretion by applying the virtually impossible standard set forth in *United States v. Swift & Co.,* 286 U.S. 106, 52 S.Ct. 460, 76 L.Ed. 999 (1932), where in an opinion written by Justice Cardozo the Supreme Court held the standard to be used in deciding whether to vacate an injunction requires a clear showing of a grievous wrong evoked by new and unforeseen conditions. *Id.* at 119, 52 S.Ct. at 464. Appellants contend the trial court should

instead apply the standards set forth in *United States v. United Shoe Mach. Corp.*, 391 U.S. 244, 88 S.Ct. 1496, 20 L.Ed. 2d 562 (1968), wherein the Supreme Court held that an injunction may be changed if the facts and circumstances prevailing at the time of the issuance of the injunction have changed or new ones have arisen.

This court has been called upon many times to decide whether the standards of *Swift* remain applicable. *See Dowell v. Board of Educ. of Okla. City Pub. Schools*, 795 F.2d 1516 (10th Cir.), *cert. denied* 479 U.S. 938, 107 S.Ct. 420, 93 L.Ed. 2d 370 (1986); *EEOC v. Safeway Stores, Inc.*, 611 F.2d 795 (10th Cir.1979), *cert. denied*, 446 U.S. 952, 100 S.Ct. 2918, 64 L.Ed.2d 809 (1980); *Securities and Exchange Comm'n v. Jan–Dal Oil & Gas, Inc.*, 433 F.2d 304 (10th Cir.1970); *Ridley v. Phillips Petroleum Co.*, 427 F.2d 19 (10th Cir.1970); *Coca–Cola Co. v. Standard Bottling Co.*, 138 F.2d 788 (10th Cir. 1943). In all of these cases, we applied the standards of *Swift*. In *Thermodynamics*, 464 F.2d at 460, we set forth the requirements of *Swift:*

> [*Swift* ] presents a difficult and perhaps severe requirement, but changes in injunctions must be based on some substantial change in law or facts. The injunction was entered based upon the then existing state of the law and upon the then existing facts. The finality of such proceedings, or granting of remedy, requires a showing of change. This is what *Swift* requires.

We conclude the trial court utilized the correct standard of law in its analysis of this case.

Appellants argue they have been heavily burdened by the injunction, and point to a barrage of state and federal regulatory actions. The trial court's response to this contention was that it was cognizant of these consequences when the injunction was issued. The trial court understood that *Swift* requires clear proof of *unforeseen* conditions, prior to vacating an injunction, and correctly ruled that Blinder, Robinson and Mr. Blinder failed to meet that burden of proof.

Appellants next contend the trial court abused its discretion in arbitrarily deciding not to credit the unrefuted evidence of rehabilitation. They argue there was no basis for the trial court to conclude that Mr. Blinder was not fully aware of his past mistakes and therefore might repeat them. We would note the trial court carefully considered the steps taken by Blinder, Robinson to ensure the firm's future compliance with securities laws and balanced this against the court's finding that Mr. Blinder continued to control the company. In response to the affidavit of Mr. Blinder, the trial court stated:

> I am not sure he [Mr. Blinder] still understands what happened here. There is a tendency once again to say, well, I made a mistake, I should have asked for a written opinion.... That isn't the reason for the injunction. There was a disregard not just for the opinions of counsel, but a disregard of the requirements of the law.

> And Mr. Blinder remains in control of this organization.... Mr. Blinder ... is not fully aware of his own fault in this case and one of the reasons ... for the injunction against his firm.

The trial court noted that the interest to be protected by the injunction was a public interest (i.e., the integrity of the securities industry), and the reason for the injunction was the ability of the enforcement agency to come to court and show a violation and to then have available the quick remedy of contempt.

Mr. Blinder's own affidavit further supports the conclusions of the trial court: "I, *Meyer Blinder*, have been and continue to be President, Chief Executive Officer, and a Director. I exercise overall executive authority." In explaining the original violations, Mr. Blinder continued: "I did not request a formal, written legal opinion from counsel ... and I now feel the failure to do so was a significant mistake by me." Couple this sworn statement with the trial court's original findings that Mr. Blinder made a business decision contrary to the advice of the attorney and a specific finding of "intent to deceive, manipulate, or

defraud," and it becomes quite evident that the record supports the conclusions of the trial court. The trial court did not arbitrarily reject the evidence of rehabilitation. In view of the record, we cannot say the trial court abused its discretion in refusing to vacate or modify the injunctions.

## II

### *The Constitutional Issue*

■ Appellants argue that the power of the SEC to commence a civil enforcement action in federal court is in violation of the separation of powers principle. Appellants contend that the SEC is an independent agency empowered to enforce federal law by means of civil actions for injunctions, and that the President is given sole and exclusive control over the execution of the laws under Article II of the Constitution which provides that the President shall "take care the laws be faithfully executed."

The trial court held the SEC may constitutionally exercise civil enforcement authority. This is a conclusion of law which we review *de novo*. *Boise City Farmers Coop. v. Palmer*, 780 F.2d 860, 866 (10th Cir.1985).

A brief overview of the SEC will be helpful in understanding the constitutional issue presented. The creation, composition, and powers of the SEC are found in the Securities Exchange Act of 1934. The commission consists of five members who are appointed by the President with the advice and consent of the Senate. The terms of the commissioners are staggered and the basic length of each term is five years. No more than three of the commissioners may be members of the same political party. The statute does not provide for a chairman. Until 1950, the Chairman was elected annually. Following Reorganization Plan No. 10 of 1950 (*see*, Reorganization Act of 1949, 5 U.S.C. §§ 901–913), the President designates the chairman. Pursuant to this Reorganization Plan, the chairman succeeded to most of the executive and administrative functions of the commission. The Act does not expressly give to the President the power to remove a commissioner. However, for the purposes of this case, we accept appellants' assertions in their brief, that it is commonly understood that the President may remove a commissioner only for "inefficiency, neglect of duty or malfeasance in office." While the SEC must transmit evidence of criminal misconduct to the Attorney General, there can be no doubt the SEC is authorized to institute civil actions in the federal district courts to enforce various security laws.

Several conclusions can be drawn from this brief overview. First, as the President has the power to choose the chairman of the SEC from its commissioners to serve an indefinite term, it follows that the chairman serves at the pleasure of the President. Second, as the chairman controls key personnel, internal organization, and the expenditure of funds, the chairman exerts far more control than his one vote would seem to indicate. Third, it can safely be assumed that in exercising his power of appointment, even as to commissioners who are not members of his party, the President will tend to appoint those persons who are sympathetic to his own views.

In *Humphrey's Executor v. United States*, 295 U.S. 602, 55 S.Ct. 869, 79 L.Ed. 1611 (1935), President Roosevelt requested Humphrey's resignation as a commissioner of the Federal Trade Commission for the reason that Humphrey and the President had differing policies concerning the administration of the commission. The statute provided that a commissioner could be removed "for inefficiency, neglect of duty, or malfeasance in office." The Supreme Court recognized the intent of Congress to create a commission that was not to be subject to anyone in the government—a body which should be independent of executive authority, *except in its selection*, and ruled that the concept of a member continuing in office at "the mere will" of the President might thwart the very ends Congress sought to realize. The Supreme Court next turned its attention to the question of whether such a limitation on the President's right to remove a commissioner is constitutional under the principles of sep-

aration of powers. The Court ·held that whether the power of the President to remove an officer shall prevail over the authority of Congress to condition the power by fixing a definite term and precluding removal except for cause, will depend upon the character of the office. The Court concluded "as to officers of the kind here under consideration" no removal can be made except as provided by statute. The Supreme Court noted the ruling would be equally applicable to members of the Interstate Commerce Commission. Both the FTC and the SEC are administrative bodies created by Congress to carry into effect legislative policies embodied in the statute. We conclude the same reasoning would apply to commissioners of the SEC.

More recently, in *Morrison v. Olson*, — U.S. —, 108 S.Ct. 2597, 101 L.Ed.2d 569 (1988), the Supreme Court decided the constitutionality of the independent counsel statutes. The law in question there provides for the appointment of an independent counsel to investigate and prosecute certain government officials for violations of federal criminal law. The law in question generally provides that upon receipt of specified information, the court shall appoint independent counsel. An independent counsel may be removed, other than by impeachment and conviction, only by the Attorney General and only for good cause, physical disability, or mental incapacity.

We note that *Morrison* is predicated in part upon *Humphrey*, which stands generally for the proposition that Congress can, without violating Article II, authorize an independent agency to bring civil law enforcement actions where the President's removal power was restricted to inefficiency, neglect of duty, or malfeasance in office. *Morrison* teaches that the real question to be answered is whether the removal restrictions impede the President's ability to perform his constitutional duty. It is a matter of fundamental law that the Constitution assigns to Congress the power to designate duties of particular officers. The President is not obligated under the Constitution to exercise absolute control over our government executives. The President is not required to execute the laws; he is required to take care they be executed faithfully. The President has the power to appoint the commissioners; he has the power to choose the chairman of the SEC who has broad powers concerning the operation and administration of the commission; the chairman serves at the President's pleasure; and, the President has the power to remove a commissioner for inefficiency, neglect of duty, or malfeasance in office. We conclude these powers give the President sufficient control over the commissioners to insure the securities laws are faithfully executed and the removal restrictions do not impede the President's ability to perform his constitutional duty.

We conclude the trial court correctly applied the proper legal standard concerning the vacation or modification of the injunction. We further conclude the civil enforcement power given to the SEC is constitutionally valid. We have carefully considered all issues raised by appellants, and those not discussed herein are found to be without merit.

For the reasons set forth herein, the judgment of the trial court is AFFIRMED.