# Holdover and Removal of Members of Amtrak's Reform Board

A member of Amtrak's Reform Board whose statutory term has expired may not hold over in office until a successor is appointed.

The President may remove a member of the Amtrak Reform Board without cause.

September 22, 2003

MEMORANDUM OPINION FOR THE COUNSEL TO THE PRESIDENT

You have asked for our opinion whether a member of Amtrak's Reform Board whose statutory term has expired may hold over in office until a successor is appointed. We believe that he may not. You have also asked whether the President may remove a member without cause. We believe that the President has that power.

## I.

Under the Amtrak Reform and Accountability Act of 1997, Pub. L. No. 105-134, 111 Stat. 2570 (1997) ("Amtrak Act" or "Act"), Amtrak is a rail carrier "operated and managed as a for-profit corporation." 49 U.S.C. § 24301(a)(1), (2) (2000). It is under the direction of a "Reform Board," which "consist[s] of 7 voting members appointed by the President, by and with the advice and consent of the Senate, for a term of 5 years." *Id.* § 24302(a). Under the Act, it "is not a department, agency, or instrumentality of the United States Government," *id.* § 24301(a)(3), and "to the extent consistent with [the Act], the District of Columbia Business Corporation Act (D.C. Code §§ 29-301 *et seq.*) appl[ies]," *id.* § 24301(e).

The Act does not provide that a member of the Reform Board may hold over after his five-year term expires. We believe, therefore, that when a member's term expires, he may no longer sit on the Reform Board:

> By the common law, as well as by the statutes of the United States, and the laws of most of the States, when the term of office to which one is elected or appointed expires, his power to perform its duties ceases. This is the general rule.

> The term of office of a district attorney of the United States is fixed by statute at four years. When this four years comes round, his right or power to perform the duties of the office is at an end, as completely as if he had never held the office.

*Badger v. United States*, 93 U.S. 599, 601 (1876) (citation omitted). As the Supreme Court similarly stated in *United States v. Eckford's Executors*, 42 U.S. (1 How.) 250, 258 (1843), "[a]t the end of [the statutory] term, the office becomes vacant, and must be filled by a new appointment."

The Executive Branch recognizes the same rule. The opinions of our Office have followed it. *See* Memorandum for John P. Schmitz, Deputy Counsel to the President, from John C. Harrison, Deputy Assistant Attorney General, Office of Legal Counsel, *Re: Expiration of the Term of the Chairman of the Federal Reserve System* at 1 (July 5, 1991) (because "[t]here is no statutory provision allowing the Chairman to hold over upon the expiration of his term," "that office will become vacant when Mr. Greenspan's term as Chairman expires"); *Federal Reserve Board—Vacancy With the Office of the Chairman—Status of the Vice Chairman (12 U.S.C. §§ 242, 244)*, 2 Op. O.L.C. 394, 395 (1978) ("Because the incumbent is not entitled to continue to exercise his powers absent reappointment, a vacancy in the position results."). And a long line of prior opinions by the Attorneys General reached the same conclusion. *See Reappointment of the District of Columbia Rent Commissioners*, 33 Op. Att'y Gen. 43, 44 (1921) ("The general rule is that where Congress has not authorized an officer to hold over, his incumbency must be deemed to cease at the end of his term, though no appointment of a successor may then have been made."); *Interstate Commerce Commission—Term of Office*, 25 Op. Att'y Gen. 332, 332–33 (1905); *Chiefs of Bureaus in the Navy Department*, 17 Op. Att'y Gen. 648, 649 (1884); *Liability of Sureties on Official Bond*, 15 Op. Att'y Gen. 214, 214–15 (1877); *Resignation of Office*, 14 Op. Att'y Gen. 259, 261–62 (1873); *Secretary of New Mexico*, 12 Op. Att'y Gen. 130 (1867); *Tenure of Navy Agents*, 11 Op. Att'y Gen. 286, 286–87 (1865) (overruling *Naval Officers Hold Over Till Successors Are Qualified*, 2 Op. Att'y Gen. 713 (1835)).

We are aware of only one argument for the position that, in the circumstances here, this rule should not apply. The District of Columbia Business Corporation Act ("D.C. Business Corporation Act") provides that "[e]ach director [of a for-profit corporation] shall hold office for the term for which elected or until a successor shall have been elected and qualified." D.C. Code Ann. § 29-101.33 (2001). The Act establishing Amtrak makes the D.C. Business Corporation Act applicable "to the extent consistent with" the Amtrak Act, 49 U.S.C. § 24301(e), and, according to the argument, it would be consistent with the Amtrak Act for the members of the Reform Board, having served their statutory terms, to hold over under the provision of District of Columbia law.[1]

---

[1] The Amtrak statute actually refers to "D.C. Code § 29-301 et seq.," and although that citation at one time would have referred to provisions about for-profit corporations, the citation now refers to the provisions governing non-profit corporations. *See* D.C. Code § 29-301 note (2001) (referring to 1981 edition). The provision of District of Columbia law governing for-profit corporations, by its terms, does not fit the situation of Amtrak's Reform Board. That provision states that a director may continue to serve "until a successor shall have been elected and qualified." D.C. Code § 29.101.33 (2001). Amtrak's Reform Board, however, is appointed, not elected. The provision on non-profit corporations,

We believe that this argument would be mistaken. In order to determine whether, and to what extent, a provision of the D.C. Business Corporation Act is "consistent with" the Amtrak Act, we must first determine what the Amtrak Act, standing alone, means and must then ascertain whether the provision of the D.C. Business Corporation Act supplements—or instead conflicts with—that meaning. In view of the well-established principle that an appointee may not continue past his term unless the statute provides for him to hold over, we believe that the Amtrak Act's specification of a simple five-year term affirmatively excludes the existence of holdover rights. Congress passed the Act against the background of the longstanding interpretation on holdover rights, and "we may presume 'that our elected representatives, like other citizens, know the law.'" *Dir., Ofc. of Workers' Comp. Progs. v. Perini North River Assocs.*, 459 U.S. 297, 319 (1983) (quoting *Cannon v. Univ. of Chicago*, 441 U.S. 677, 696–97 (1979)). *See also Edelman v. Lynchburg Coll.*, 535 U.S. 106, 117 (2002) ("Congress being presumed to have known of this settled judicial treatment"). Furthermore, the federal statute at one time expressly allowed a director to hold over after his term had ended, until a new director was selected, *see* 49 U.S.C. § 24302(a)(2)–(4) (1994), but Congress later deleted this provision, *compare* Pub. L. No. 103-272, § 1(e), 108 Stat. 745, 906 (1994), *with* Pub. L. No. 105-134, § 411(a), 111 Stat. 2570, 2588 (1997). The holdover rights under the D.C. Business Corporation Act therefore do not fill in a term that the Amtrak Act leaves open, but instead conflict with that statute's rejection of holdover rights.

In *Lebron v. National Railroad Passenger Corp.*, 513 U.S. 374, 385 (1995), where the Supreme Court held that Amtrak is part of the federal government for purposes of the First Amendment but ordinarily is treated, for statutory purposes, as a corporation under the laws of the District of Columbia, the Court noted that the statutory provisions governing Amtrak are nevertheless contrary to District of Columbia law "with respect to many matters of structure and power, including the manner of selecting the company's board of directors." The Court listed, as an instance where the federal statute conflicts with District of Columbia law, the provision that, at the time, set a four-year term for a director. *Id*. So, too, the provision of the Act that now sets a simple five-year term is inconsistent with, and therefore is not supplemented by, District of Columbia law.

---

by contrast, uses the language "until his successor shall have been elected or appointed." D.C. Code § 29.301.19(c). We find it unnecessary to attempt to resolve which part of the District of Columbia law of corporations—the part governing for-profit corporations or the part governing non-profits—applies to Amtrak "to the extent consistent with" the Amtrak Act, because, as we explain below, the holdover rights under each are not consistent with the Amtrak Act.

## II.

We believe that the President, even without cause, may remove a member of Amtrak's Reform Board. As a general matter, the power of appointment "carrie[s] with it the power of removal." *Myers v. United States*, 272 U.S. 52, 119 (1926). This "rule of constitutional and statutory construction" recognizes that "those in charge of and responsible for administering functions of government who select their executive subordinates, need in meeting their responsibility to have the power to remove those whom they appoint." *Id. See also Sampson v. Murray*, 415 U.S. 61, 70 n.17 (1974); *Keim v. United States*, 177 U.S. 290, 293–94 (1900); *Ex Parte Hennen*, 38 U.S. (13 Pet.) 230, 259 (1839). The power of removal aids the President in carrying out his constitutional duty to exercise "the executive Power" and "take Care that the Laws be faithfully executed." U.S. Const. art. II, §§ 1, 3. *See Morrison v. Olson*, 487 U.S. 654, 689–90 (1988).

This structural principle, we believe, applies to Amtrak. Although for statutory purposes Amtrak "is not a department, agency, or instrumentality of the United States Government," 49 U.S.C. § 24301(a)(3), the Supreme Court in *Lebron* held, in the context of claims that Amtrak had violated the First Amendment, that it is "an agency of the Government, for purposes of the constitutional obligations of the Government . . . when the [Government] has specifically created that corporation for the furtherance of governmental objectives, and not merely holds some shares but controls the operation of the corporation through its appointees." 513 U.S. at 399. Applying *Lebron*, our Office has concluded that "[w]e can conceive of no principled basis for distinguishing between the status of a federal entity vis-à-vis constitutional obligations relating to individual rights and vis-à-vis the structural obligations that the Constitution imposes on federal entities." *The Constitutional Separation of Powers Between the President and Congress*, 20 Op. O.L.C. 124, 148 n.70 (1996) (citation omitted) ("*Constitutional Separation of Powers*"). A fundamental element of Executive Branch structure is that presidential appointees are subject to removal by the President.

Congress provided no express restriction against removal, without cause, of members of the Reform Board. Because the removal power is a principal means by which the President carries out the executive power and takes care that the laws be faithfully executed, we do not believe that any restriction on the President's removal authority should be inferred. *See Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991) ("When Congress decides purposefully to enact legislation restricting or regulating presidential action, it must make its intent clear.").

To be sure, in *Wiener v. United States*, 357 U.S. 349 (1958), the Supreme Court did infer a tenure protection from statutory silence. There, the Court held that the President could not remove, without cause, a member of the War Claims Commission, "an adjudicating body with all the paraphernalia by which legal claims are put to the test of proof, with finality of determination 'not subject to review by any other official of the United States or by any court by mandamus or otherwise.'" *Id.*

at 354–55 (citation omitted). The Court reasoned that the "intrinsic judicial character of the task with which the Commission was charged" could not be squared with tenure at the pleasure of the President.[2] *Id.* The Amtrak Reform Board runs a business; it is not an adjudicatory body. Consequently, there is no ground for inferring any tenure protection for the Reform Board's members under the reasoning of *Wiener*.

In *Constitutional Separation of Powers*, we analyzed the cases about removal restrictions and concluded that "[i]n situations in which Congress does not enact express removal limitations, . . . the executive branch should resist any further application of the *Wiener* rationale, under which a court may infer the existence of a for-cause limit on presidential removal, except with respect to officers whose only functions are adjudicatory." 20 Op. O.L.C. at 170 (footnote omitted). However, even if we were to concede that removal restrictions sometimes may be inferred for officers whose duties are not wholly adjudicatory, such as the members of the "independent" regulatory commissions, the Reform Board lacks some critical characteristics of the multi-member boards whose members the lower courts have assumed to be tenure-protected despite the absence of any express statutory limit on removal. The members of the Reform Board do not serve staggered terms; they are not subject to political balance requirements, although the President is to consult with both the majority and minority leaders in making his selections; and they do not engage in regulation through agency adjudication and rulemaking.[3] *Cf. FEC v. NRA Political Victory Fund*, 6 F.3d 821, 826 (D.C. Cir. 1993) (the Federal Election Commission was "likely correct" that "the President can remove the commissioners only for good cause, which limitation is implied by the Commission's structure and mission as well as the commissioners' terms"); *SEC v. Blinder, Robinson & Co.*, 855 F.2d 677, 681 (10th Cir. 1988) ("[F]or purposes of this case, we accept appellants' assertion in their brief, that it is commonly understood that the President may remove a commissioner [of the Securities and Exchange Commission] only for 'inefficiency, neglect of duty, or malfeasance in office.'"). Even if the independent regulatory commissions are taken as a model, no tenure protection could be found here.

Nevertheless, in *Lebron*, the Supreme Court suggested that the President might not be able to remove Amtrak's directors at all:

---

[2] Although the Court's later decision in *Morrison v. Olson*, 487 U.S. 654 (1988), stated that an officer's function is only one consideration in deciding whether an express statutory protection of tenure is constitutional, *id.* at 691, the Court in *Morrison* did not address the role of an officer's function when tenure protection might be inferred from statutory silence.

[3] Furthermore, the President is authorized to appoint to the Reform Board the Secretary of Transportation, 49 U.S.C. § 24302(a)(2)(ii), an official who plainly may be removed by the President without cause, and we understand that, in the practical application of this provision, the Secretary is understood to serve on the Reform Board only as long as he holds the office of Secretary.

> [Amtrak] is established and organized under federal law for the very purpose of pursuing federal governmental objectives, under the direction and control of federal governmental appointees. It is in that respect no different from the so-called independent regulatory agencies such as the Federal Communications Commission and the Securities and Exchange Commission, which are run by Presidential appointees with fixed terms. It is true that the directors of Amtrak, unlike commissioners of the independent regulatory agencies, are not, by the explicit terms of the statute, removable by the President for cause, and are not impeachable by Congress. But any reduction in the immediate accountability for Amtrak directors vis-à-vis regulatory commissioners seems to us of minor consequence for present purposes—especially since, by the very terms of the chartering Act, Congress's "right to repeal, alter, or amend this chapter at any time is expressly reserved."

513 U.S. at 398 (citation omitted). The Court's discussion of the President's control over Amtrak's directors, we believe, was dictum. It was not essential to the conclusion in *Lebron* because the Court found that the government exercises control over Amtrak *even if* the President has less authority than over the independent regulatory agencies. Further, the passage starts from incorrect premises and arrives at an incorrect conclusion. The commissioners of the Federal Communications Commission and the Securities and Exchange Commission are not "by the explicit terms of the statute[s], removable by the President for cause." In each case the statute is silent on removal. *See* 15 U.S.C. § 78d(a) (2000); 47 U.S.C. § 154(a), (c) (2000). Thus, in each case, the President's power follows from the general principles that we have set out above and not from an explicit statutory grant of power. The power of *Congress* to revoke Amtrak's charter, moreover, while relevant to whether Amtrak is part of the government for constitutional purposes, does not enable the *President* to carry out his constitutional responsibilities. To discharge those responsibilities, the President needs the power of removal, and he has that power even in the absence of a statutory provision that confers it upon him.

M. EDWARD WHELAN III
*Acting Assistant Attorney General*
*Office of Legal Counsel*
