# Removability of the Federal Coordinator for Alaska Natural Gas Transportation Projects

The Federal Coordinator for the Alaska Natural Gas Transportation Projects serves at the pleasure of the President and thus may be removed at the President's will.

October 23, 2009

MEMORANDUM OPINION FOR THE
PRINCIPAL DEPUTY COUNSEL TO THE PRESIDENT

This memorandum confirms oral advice about the removability of the Federal Coordinator for the Alaska Natural Gas Transportation Projects ("Federal Coordinator" or the "Coordinator"). Specifically, you asked us whether the statute establishing the Office of the Federal Coordinator, 15 U.S.C. § 720d (2006), restricts the President's power to remove the Coordinator. As we previously explained in our oral advice and now explain in greater detail, we believe that the Federal Coordinator serves at the pleasure of the President and thus may be removed at the President's will.

Congress enacted the Alaska Natural Gas Pipeline Act ("ANGPA," or "the Act") to encourage the speedy construction of a pipeline carrying natural gas from the Alaskan North Slope to the contiguous United States. *See* Pub. L. No. 108-324, div. C, 118 Stat. 1220, 1255 (2004); *see generally Exxon Mobil Corp. v. FERC*, 501 F.3d 204, 207 (D.C. Cir. 2007). The Act established the Office of the Federal Coordinator for Alaska Natural Gas Transportation Projects "as an independent office in the executive branch." ANGPA § 106(a) (codified at 15 U.S.C. § 720d(a) (2006)). The Office is "headed by a Federal Coordinator" "who shall be appointed by the President, by and with advice and consent of the Senate, to serve a term to last until 1 year following the completion of the [natural gas pipeline] project referred to in section 720a of this title." 15 U.S.C. § 720d(b)(1). The Act further provides that the Coordinator "shall be responsible for—(1) coordinating the expeditious discharge of all activities by Federal agencies with respect to an Alaska natural gas transportation project; and (2) ensuring the compliance of Federal agencies with the provisions of this chapter." *Id.* § 720d(c).

Critically, the Act does not set out any preconditions for the removal of the Federal Coordinator. As a general matter, "[i]n the absence of a specific provision to the contrary, the power of removal from office is

incident to the power of appointment." *Keim v. United States*, 177 U.S. 290, 293–94 (1900); *cf. Armstrong v. Bush*, 924 F.2d 282, 289 (D.C. Cir. 1991) ("When Congress decides purposefully to enact legislation restricting or regulating presidential action, it must make its intent clear."). This "rule of constitutional and statutory construction" recognizes that "those in charge of and responsible for administering functions of government who select their executive subordinates, need in meeting their responsibility to have the power to remove those whom they appoint." *Myers v. United States*, 272 U.S. 52, 119 (1926). These principles support the inference that an officer serves at the pleasure of the President where Congress has not plainly provided for it. *See, e.g.*, *The Constitutional Separation of Powers Between the President and Congress*, 20 Op. O.L.C. 124, 170 (1996) ("*Separation of Powers*"); *see also id.* at 172–73 ("[B]ecause the [officer]'s tenure is not protected by an explicit for-cause removal limitation, . . . we therefore infer that the President has at least the formal power to remove the [officer] at will."); *Removal of Holdover Officials Serving on the Federal Housing Finance Board and the Railroad Retirement Board*, 21 Op. O.L.C. 135, 135 (1997) ("*FHFB/RRB Removal*").

Because Congress did not explicitly provide tenure protection to the Federal Coordinator, the President, consistent with the above settled principles, may remove her without cause.

The only two textual indications that are conceivably to the contrary—i.e., the Coordinator's fixed term, 15 U.S.C. § 720d(b)(1), and the "independen[ce]" of the Office, *id.* § 720d(a)—do not undermine the above conclusion. First, the Supreme Court has long held fixed terms to impose a limit on service but not to imply tenure protection. *Parsons v. United States*, 167 U.S. 324, 338–39 (1897) (President can remove United States Attorneys even during their appointed four-year terms); *see also* Memorandum for J. Paul Oetken, Associate Counsel to the President, from Randolph D. Moss, Assistant Attorney General, Office of Legal Counsel, *Re: Displacement of Recess Appointees in Tenure-Protected Positions* (Sept. 1, 2000) (noting that "statutory term is a limit, rather than a protection of tenure."). The Act's legislative history supports the application of those precedents here. A predecessor bill of the same Congress, S. 1005, defined the Federal Coordinator position using language nearly identical to that in 15 U.S.C. § 720d. Although the accompanying Senate Report observed that the "Coordinator will serve a term that lasts one year

beyond the completion of construction on the pipeline," S. Rep. No. 108-43, at 138 (2003), it explained that the Coordinator "will serve at the pleasure of the President." *Id.*\*

Second, that Congress established the Office of the Federal Coordinator as an "independent office in the executive branch," 15 U.S.C. § 720d(a), does not imply tenure protection. As we observed with respect to similar language, "[a]ll that should be inferred from the status of an 'independent agency' is that the entity is not located within another department or agency." *FHFB/RRB Removal*, 21 Op. O.L.C. at 138 n.5; *see also* Memorandum for the Attorney General from Nicholas deB. Katzenbach, Assistant Attorney General, Office of Legal Counsel, *Re: Removability of Members of the Renegotiation Board* (Feb. 24, 1961) ("The significance of th[e] . . . phrase [i.e., 'an independent establishment in the executive branch of the Government'] is uncertain, but there is reason to believe that Congress intended to make the Board independent of the Department of Defense and of other agencies in the executive branch, without necessarily intending that it be independent of the President as head of the executive branch."). Thus, Congress granted the Federal Coordinator a measure of free-standing authority from other executive agencies—not from the President. Indeed, although the statute grants limited authority to the Coordinator to overrule certain terms and conditions set by other federal agencies in their agreements related to the pipeline project, 15 U.S.C. § 720d(d)(2), it expressly subjects a critical aspect of the Federal Coordinator's duties to presidential oversight. *Id.* § 720d(e)(1) (requiring Coordinator to enter into a "joint surveillance and monitoring agreement" with the State of Alaska that shall be subject to the President's approval).

The Supreme Court has recognized an exception to the above settled rule against inferring tenure protection in the face of congressional silence. That case is inapplicable here. In *Wiener v. United States*, the

---

\* As reported out of the House Committee on Energy and Commerce, a competing bill explicitly provided that the Coordinator would "hold office at the pleasure of the President." H.R. 1644, § 2007(b)(2); H.R. Rep. No. 108-65 (2003). We do not see this provision as significant, however, since, as we have explained, there is no requirement that a law contain an express at-will removal provision. Indeed, the Senate Report, noting that the Coordinator serves at the President's pleasure, is consistent with the general rule that an express at-will removal provision need not be included in the enacted law in order to make the officer subject to the President's plenary removal authority.

Supreme Court upheld restrictions on the removal of members of the War Claims Commission because of "the intrinsic judicial character of [their] task." 357 U.S. 349, 355–56 (1958); *see also Separation of Powers*, 20 Op. O.L.C. at 170 (Executive Branch should not "infer the existence of a for-cause limit on presidential removal," "except with respect to officers whose only functions are adjudicatory."). Tasked by Congress with coordinating among various agencies and ensuring compliance with the Act, the Federal Coordinator performs quintessentially executive—not adjudicatory—functions. *Cf. Morrison v. Olson*, 487 U.S. 654, 691 (1988) (stating that an officer's function is only one consideration in deciding whether an express statutory protection of tenure is constitutional). Although *Wiener* concerned officers with adjudicatory functions, we are aware that there is language in cases, often in dictum, suggesting that a for-cause removal restriction may be inferred even for officers whose duties are not wholly adjudicatory, such as the board members of "independent" regulatory commissions. *See Swan v. Clinton*, 100 F.3d 973, 982–83 (D.C. Cir. 1996) (Board of National Credit Union Administration); *FEC v. NRA Political Victory Fund*, 6 F.3d 821, 826 (D.C. Cir. 1993) (Federal Election Commission); *SEC v. Blinder, Robinson & Co.*, 855 F.2d 677, 681 (10th Cir. 1988) (Securities and Exchange Commission); *cf. Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 537 F.3d 667, 680 (D.C. Cir. 2008) (recognizing for-cause removal restriction as to SEC Commissioners), *cert. granted*, 129 S. Ct. 2378 (2009) (No. 08-861). However, these multi-member boards, the appointments to which are typically subject to political balance requirements and staggered terms, do not remotely resemble the Office of the Federal Coordinator. Accordingly, we do not believe these cases addressing them provide support for departing from the general rule we have identified.

In sum, because Congress did not explicitly confer tenure protection upon the Federal Coordinator, the President may remove the incumbent officer at will.

DAVID J. BARRON
*Acting Assistant Attorney General*
*Office of Legal Counsel*